**GUARDIAN ROYAL EXCHANGE
ASSURANCE, LTD.,
Petitioner,**

v.

**ENGLISH CHINA CLAYS, P.L.C.
et al., Respondent.**

No. C–8367.

Supreme Court of Texas.

Feb. 27, 1991.

Rehearing Overruled Sept. 11, 1991.

Gayle A. Boone, Edward S. Hubbard, Michael L. Dinnin and J. Clifford Gunter, III, Houston, for petitioner.

Elizabeth J. Lindell, Donald D. Gavlick, San Antonio, for respondent.

## OPINION

HIGHTOWER, Justice.

The issue before this court is whether it is consistent with the requirements of due process of law under the United States Constitution for Texas courts to assert *in personam* jurisdiction over Guardian Royal Exchange Assurance, Ltd. ("Guardian Royal"), an English insurance company. Southern Clay Products, Inc. ("Southern Clay"), Gonzales Clay Corporation ("Gonzales Clay"), English China Clays Overseas Investments Ltd. ("Overseas Investments") and English China Clays, P.L.C. ("English China")[1] sued Guardian Royal in Gonzales County, Texas. The trial court granted Guardian Royal's special appearance and dismissed the cause. The court of appeals reversed the judgment of the trial court and remanded the cause for trial. 762 S.W.2d 927. We reverse the judgment of the court of appeals and affirm the judgment of the trial court.

Guardian Royal is an English insurance company with its office and principal place of business in England. English China is an English company with American subsidiaries including Southern Clay and Gonzales Clay, which are Texas corporations. In 1980–81, Guardian Royal issued an insurance policy including several endorsements[2] to English China providing coverage for third party liability occurring anywhere in the world English China and its subsidiary companies did business. These transactions occurred in England between an English insurer and an English insured. All acts concerning the negotiation, implementation and performance of the policy and endorsement (including the payment of premiums) occurred in England between Guardian Royal and English China.

Guardian Royal asserts that the coverage was extended to the American subsidiaries on the understanding that they would obtain underlying liability insurance from American insurers. Although the endorsement to the policy listed Southern Clay and Gonzales Clay as located in the "U.S.A.", there was no indication that these subsidiaries were located in Texas.[3] Furthermore, Guardian Royal did not know whether English China or its American subsidiaries did business in Texas or sent products to Texas. Subsequently Southern Clay acquired liability coverage from United States Fire Insurance Company ("U.S. Fire") and others.

In 1982, an employee of Southern Clay was killed in an on-the-job accident in Gonzales County, Texas. The deceased's family filed wrongful death lawsuits against the English China entities and others in federal and state courts in Texas. The English China entities settled the lawsuits and U.S. Fire contributed approximately $600,000 to the settlement. Asserting that the policy covered English China and its subsidiaries only for liability in excess of the coverage provided by American insurers, Guardian Royal declined to participate in or contribute to the settlement of the lawsuits. The English China entities asserted that Guardian Royal should "reimburse" U.S. Fire[4] for its settlement contribution on their behalf because Guardian Royal was the "primary insurer." After

---

1. In this opinion these parties are collectively referred to as the "English China entities."

2. The endorsements substantially altered the terms of the original policy. Among other things, the endorsements (1) extended coverage to English China's subsidiaries including Southern Clay and Gonzales Clay, (2) extended the definition of "Insured" to include any associated or subsidiary company of English China anywhere in the world, and (3) deleted the policy's geographical limits.

3. Of approximately 120 subsidiaries of English China identified in the endorsement, only 9 subsidiaries were located in the United States.

4. As a result of the settlement, U.S. Fire has been subrogated to the rights of the English China entities in this cause. Therefore, U.S. Fire is the real party in interest.

Guardian Royal refused to "reimburse" U.S. Fire, the English China entities sued Guardian Royal. Guardian Royal filed a special appearance pursuant to Rule 120a of the Texas Rules of Civil Procedure asserting that it did not have such minimum contacts with Texas as would allow the court to exercise personal jurisdiction without offending traditional notions of fair play and substantial justice. The trial court granted the special appearance and dismissed the cause. The court of appeals reversed the judgment of the trial court and remanded the cause for trial. 762 S.W.2d 927.

Guardian Royal argues that it is inconsistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over Guardian Royal in this cause. We agree.

■ The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX. CIV.PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986). Although it lists particular acts which constitute "doing business," the statute also provides that the nonresident's "other acts" may satisfy the "doing business" requirement. *Id. See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). The broad language of the long-arm statute's "doing business" requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Schlobohm,* 784 S.W.2d at 357; *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977). As a result, we consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over Guardian Royal. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404, 410–11 (1984).

Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over a nonresident defendant such as Guardian Royal. *Helicopteros,* 466 U.S. at 413–14, 104 S.Ct. at 1872. The United States Supreme Court divides the due process requirements into

two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528, 542–43 (1985). *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872.

### I.

Under the minimum contacts analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183. This "purposeful availment" requirement ensures that a nonresident defendant will not be haled into a jurisdiction based solely upon "random," "fortuitous" or "attenuated" contacts or the "unilateral activity of another party or a third person." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183; *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1873; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 298, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 502 (1980). Furthermore, individuals must have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182; *Zac Smith & Co. v. Otis Elevator Co.,* 734 S.W.2d 662, 663 (Tex. 1987).

■ The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183–84. The substantial connection between the nonresident defendant and the forum state necessary for a finding of minimum contacts must come about by action or conduct of the nonresident defendant purposefully directed toward the forum state. *Burger King,* 471 U.S. at 472–76, 105 S.Ct. at 2182–84. However, "the constitutional touchstone remains whether the [nonresi-

dent] defendant purposefully established 'minimum contacts' in the forum State." *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183.

Foreseeability is also an important consideration in deciding whether the nonresident defendant has purposely established "minimum contacts" with the forum state. However, "foreseeability" is not necessarily determinative when considering whether the nonresident defendant purposefully established "minimum contacts" with the forum state. Although not an independent component of the minimum contacts analysis, the concept of "foreseeability" is implicit in the requirement that there be a "substantial connection" between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. at 567; *Burger King,* 471 U.S. at 474, 105 S.Ct. at 2183. "Foreseeability" is especially pertinent when the nonresident defendant is an insurance company. *See Rossman v. State Farm Mutual Ins. Co.,* 832 F.2d 282 (4th Cir.1987); *Eli Lilly & Co. v. Home Ins. Co.,* 794 F.2d 710 (D.C.Cir.1986), *cert. denied,* 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1987); *Commonwealth of Puerto Rico v. S.S. Zoe Colocotroni,* 628 F.2d 652 (1st Cir.1980), *cert. denied,* 450 U.S. 912, 101 S.Ct. 1350, 67 L.Ed.2d 336 (1981); *American & Foreign Insurance Ass'n v. Commercial Ins. Co.,* 575 F.2d 980 (1st Cir.1978). These authorities upheld the assertion of personal jurisdiction over insurance companies based primarily upon "foreseeability."[5] *Rossman,* 832 F.2d at 286–87 (automobile liability); *Eli*

*Lilly,* 794 F.2d at 720–21 (pharmaceutical products); *Colocotroni,* 628 F.2d at 668–70 (maritime "vessels" such as oil tankers); *American & Foreign Insurance Ass'n,* 575 F.2d at 981–82 (glass bottles). "Foreseeability" was based upon the insurer's awareness "that it was responsible to cover losses arising from a substantial subject of insurance regularly present in" the forum state, *Colocotroni,* 628 F.2d at 669 and *American & Foreign Insurance Ass'n,* 575 F.2d at 982, or the nature of the particular insurance contract and coverage,[6] *Rossman,* 832 F.2d at 286 and *Eli Lilly,* 794 F.2d at 720–21. Thus, when the nonresident defendant is an insurance company, the following factors, when appropriate, should be considered when determining whether the nonresident defendant has purposely established "minimum contacts" with the forum state: (a) the insurer's awareness that it was responsible to cover losses arising from a substantial subject of insurance regularly present in the forum state; and (b) the nature of the particular insurance contract and its coverage.

The United States Supreme Court has refined the minimum contacts analysis into specific and general jurisdiction. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contact with the forum state in order to satisfy the minimum contacts requirement. *Helicopteros,* 466 U.S. at 414 n. 8, 104 S.Ct. at 1872 n. 8. *See World–Wide Volkswagen,* 444 U.S. at 293–94, 100 S.Ct. at 565. However, the contact must have resulted from the nonresident defendant's purposeful conduct and not the unilateral activity of the plaintiff or others. *See Helicopteros,* 466 U.S.

---

**5.** These authorities also considered the insurer's ability to protect itself based upon, among other things, its power to limit the coverage to specific jurisdictions and by charging higher premiums. *Rossman,* 832 F.2d at 287; *Eli Lilly,* 794 F.2d at 721; *Colocotroni,* 628 F.2d at 669–70. However, while an insurer may undoubtedly protect itself by limiting coverage to specific jurisdictions and charging higher premiums, this is irrelevant in determining whether the insurer purposefully established "minimum contacts" with the forum state.

**6.** "As an automobile liability insurer, Consolidated [the insurer] could anticipate the risk

that its clients would travel in their automobiles to different states and become involved in accidents and litigation there." *Rossman,* 832 F.2d at 286. The insurers "knew that their insured, Lilly, distributed its [pharmaceutical] products nationwide" and "therefore were aware that *Lilly* was likely to be sued in any jurisdiction in the nation...." *Eli Lilly,* 794 F.2d at 720. Furthermore, "an insurer has a commercial interest in knowing how, and to what degree, an insured manufacturer has contacts with a forum state." *Id.* at 721.

at 417, 104 S.Ct. at 1873; *World–Wide Volkswagen,* 444 U.S. at 298, 100 S.Ct. at 567–68. Furthermore, the nonresident defendant's activities must have been "purposefully directed" to the forum and the litigation must result from alleged injuries that "arise out of or relate to" those activities. *Burger King,* 471 U.S. at 472, 105 S.Ct. at 2182; *Zac Smith & Co.,* 734 S.W.2d at 663. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum and the litigation. *Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872; *Schlobohm,* 784 S.W.2d at 357.

■ General jurisdiction may be asserted when the cause of action does not arise from or relate to the nonresident defendant's purposeful conduct within the forum state but there are continuous and systematic contacts between the nonresident defendant and the forum state. *Helicopteros,* 466 U.S. at 414–16, 104 S.Ct. at 1872–73; *Schlobohm,* 784 S.W.2d at 357. When general jurisdiction is asserted, the minimum contacts analysis is more demanding and requires a showing of substantial activities in the forum state. *Schlobohm,* 784 S.W.2d at 357.

## II.

■ Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, the contacts are evaluated in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113–15, 107 S.Ct. 1026, 1033–34, 94 L.Ed.2d 92, 105 (1987); *Burger King,* 471 U.S. at 476, 105 S.Ct. at 2184. These factors include (1) "the burden on the defendant," (2) the interests of the forum state in adjudicating the dispute, (3) "the plaintiff's interest in obtaining convenient and effective relief," [7] (4) "the interstate judicial system's interest in obtaining

the most efficient resolution of controversies," and (5) "the shared interest of the several States in furthering fundamental substantive social policies." *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564; *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033–34. "These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required." *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184. However, regardless of these factors, it must be established that the nonresident defendant purposely established minimum contacts with the forum state. Even if the nonresident defendant has purposely established minimum contacts with the forum state, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case. *Burger King,* 471 U.S. at 477–78, 105 S.Ct. at 2185.

■ When the defendant is a resident of another nation, the court must also consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction by a state court:

*World–Wide Volkswagen* also admonished courts to take into consideration the interests of the "several States," in addition to the forum State, in the efficient judicial resolution of the dispute and the advancement of substantive policies. In the present case, this advice calls for a court to consider the procedural and substantive policies of other *nations* whose interests are affected by the assertion of jurisdiction by the California court. The procedural and substantive interests of other nations in a state court's assertion of jurisdiction over an alien defendant will differ from case to case. In every case, however, those interests, as well as the Federal Government's interest in its foreign relations policies, will be best served by a careful inquiry into the reasonableness of the

7. This factor was fully described in *World–Wide Volkswagen* as "the plaintiff's interest in obtaining convenient and effective relief ... at least when that interest is not adequately protected

by the plaintiff's power to choose the forum...." 444 U.S. at 292, 100 S.Ct. at 564 (citations omitted).

assertion of jurisdiction in the particular case, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the plaintiff or the forum State. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *United States v. First National City Bank*, 379 U.S. 378, 404, 85 S.Ct. 528, 542, 13 L.Ed.2d 365 (1965) (Harlan, J., dissenting).

*Asahi*, 480 U.S. at 115, 107 S.Ct. at 1034–35 (emphasis in original). "The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders." *Asahi*, 480 U.S. at 114, 107 S.Ct. at 1034. Thus, when an "international dispute" is involved, the following factors, when appropriate, should also be considered: (a) the unique burdens placed upon the defendant who must defend itself in a foreign legal system; and (b) the procedural and substantive policies of other nations whose interests are affected as well as the federal government's interest in its foreign relations policies.

■ The state's regulatory interests are also an important consideration in deciding whether the exercise of jurisdiction is reasonable. Other courts have recognized that the states have a legitimate concern in areas in which the state possesses a manifest regulatory interest such as insurance, securities and hazardous and toxic waste. *See Shaffer v. Heitner*, 433 U.S. 186, 222–26, 97 S.Ct. 2569, 2589–91, 53 L.Ed.2d 683, 708–12 (1977) (Brennan, J., concurring in

part and dissenting in part).[8] Traditionally, regulation of the "business of insurance" has been delegated to the states by the federal government. *See* McCarran–Ferguson Act, 15 U.S.C. § 1012 (1976); Reyes, *Insurance Company Liquidation in Texas—"The Basics,"* 51 TEX.B.J. 957 (1988).

The State of Texas has a special interest in regulating certain areas such as insurance, and the Texas courts have implicitly recognized the role of that interest for purposes of determining personal jurisdiction. *See First National Bank of Libby, Montana v. Rector*, 710 S.W.2d 100, 106 (Tex. App.—Austin 1986, writ ref'd n.r.e.); *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d 765, 773–74 (Tex.App.—Corpus Christi 1985, no writ); *GRM v. Equine Inv. & Management Group*, 596 F.Supp. 307, 317 (S.D.Tex.1984); *but see Beechem v. Pippin*, 686 S.W.2d 356, 360–61 (Tex. App.—Austin 1985, no writ). We find that a state's regulatory interest in a certain area or activity such as insurance is an important consideration in deciding whether the exercise of jurisdiction is reasonable and that a state's regulatory interest may establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. However, a state's regulatory interest alone is not in and of itself sufficient to provide a basis for jurisdiction.

### III.

In *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex.1966), this court adopted the following "formula" articulated by the Supreme Court of Washington in *Tyee Construction Co. v. Dulien Steel Products*,

---

**8.** A "State's valid substantive interests are important considerations in assessing whether it constitutionally may claim jurisdiction over a given cause of action." *Shaffer*, 433 U.S. at 223, 97 S.Ct. at 2589 (Brennan, J., concurring in part and dissenting in part). "[S]tate courts have legitimately read their jurisdiction expansively when a cause of action centers in an area in which the forum State possesses a manifest regulatory interest." 433 U.S. at 223, 97 S.Ct. at 2590 (Brennan, J., concurring in part and dissenting in part). *See, e.g., McGee v. International Life Ins. Co.*, 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223, 226 (1957) (insurance regu-

lation: "It cannot be denied that California has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims."); *O'Neil v. Picillo*, 682 F.Supp. 706, 714 n. 1 (D.R.I.1988) (heavily regulated activities—hazardous/toxic substances); *Wichita Federal Savings & Loan Ass'n v. Landmark Group, Inc.*, 674 F.Supp. 321, 326 (D.Kan. 1987) (securities regulation: "It is also relevant to this inquiry that the defendants are engaging in a highly regulated activity, making it more foreseeable that they might have to litigate in a distant forum.").

*Inc.*, 62 Wash.2d 106, 381 P.2d 245, 251 (1963), to determine when assertion of jurisdiction over a nonresident defendant is proper:

(1) the nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) the cause of action must arise from, or be connected with, such act or transaction; and

(3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*O'Brien v. Lanpar Co.*, 399 S.W.2d at 342. This jurisdictional formula [9] was designed in an effort to ensure compliance with the federal constitutional requirements of due process. *Schlobohm*, 784 S.W.2d at 358. Since 1966, this court has dutifully repeated this jurisdictional formula. *See, e.g., U–Anchor Advertising*, 553 S.W.2d at 762; *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d 434, 436 (Tex. 1982); *Hall v. Helicopteros Nacionales de Colombia*, 638 S.W.2d 870, 872 (Tex.1982), *rev'd on other grounds*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Zac Smith & Co.*, 734 S.W.2d at 664; *Schlobohm*, 784 S.W.2d at 358. However, during the past 24 years, the parameters of personal jurisdiction have evolved as the United States Supreme Court has continued to examine, develop and refine the permissible reach of federal due process.[10] Therefore, under appropriate circumstances, the jurisdictional formula may be reviewed, and, if necessary, modified to ensure compliance with federal constitutional requirements of due process. This court recently acknowledged the necessity to review the jurisdictional formula, and, as a result, modified the second part of the formula to include the concept of general jurisdiction. *Schlobohm*, 784 S.W.2d at 358.

### IV.

■ Today, we further clarify the jurisdictional formula to ensure compliance with federal constitutional requirements of due process. First, the nonresident defendant must have purposefully established "minimum contacts" with Texas.[11] There must be a "substantial connection" [12] between the nonresident defendant and Texas arising from action or conduct of the nonresident defendant purposefully directed toward Texas. When specific jurisdiction is asserted, the cause of action must arise out of or relate to the nonresident defendant's contacts with Texas. When general jurisdiction is alleged, there must be continuous and systematic contacts between the nonresident defendant and Texas. General jurisdiction requires a showing of substantial activities by the nonresident defendant in Texas.

*King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987).

9. In *Schlobohm*, the second part of the jurisdictional formula was modified to incorporate the concept of general jurisdiction:

(2) The cause of action must arise from, or be connected with, such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic. 784 S.W.2d at 358.

10. *See, e.g., Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Burger*

11. In analyzing minimum contacts, it is not the number, but rather the quality and nature of the nonresident defendant's contacts with the forum state that is important. *Texas Commerce Bank v. Interpol '80 Ltd.*, 703 S.W.2d 765, 772 (Tex. App.—Corpus Christi 1985, no writ).

12. "So long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction." *Burger King*, 471 U.S. at 475 n. 18, 105 S.Ct. at 2184 n. 18. *See McGee*, 355 U.S. at 223, 78 S.Ct. at 201.

■ Second, the assertion of personal jurisdiction must comport with fair play and substantial justice. In this inquiry, it is incumbent upon the defendant to present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2185; *see also Zac Smith & Co.*, 734 S.W.2d at 664.[13] The following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute (including the state's special regulatory interest in areas such as insurance); (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.

Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state. *See Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2185; *see also Schlobohm*, 784 S.W.2d at 358 ("it has become less likely that the exercise of jurisdiction will fail a fair play analysis.").[14] The stringent standard to be applied is set forth in *Burger King*:

> [W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a *compelling case* that the presence of some other considerations would render jurisdiction unreasonable. *Most such considerations usually may be accommodated through means short of finding jurisdiction unconstitutional.* For example, the potential clash of the forum's law with the "fundamental substantive social policies" of another State may be accommodated through ap-

plication of the forum's choice-of-law rules. Similarly, a defendant claiming substantial inconvenience may seek a change of venue.

471 U.S. at 477, 105 S.Ct. at 2185 (emphasis added) (footnotes omitted); *see also Zac Smith & Co.*, 734 S.W.2d at 664 (quoting same language). Nor is distance alone ordinarily sufficient to defeat jurisdiction: "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *McGee*, 355 U.S. at 223, 78 S.Ct. at 201.

## V.

In applying the jurisdictional formula to a particular case, the facts must be carefully weighed and mechanical application of any test, including the Texas formula, must be avoided. *Schlobohm*, 784 S.W.2d at 358. *See Burger King*, 471 U.S. at 477–78, 105 S.Ct. at 2185. In addition, Texas courts should strive to utilize a realistic approach when applying the jurisdictional formula. *See Burger King*, 471 U.S. at 478–79, 105 S.Ct. at 2185. The jurisdictional formula is a useful jurisdictional checklist which ensures that all aspects of the necessary analysis have been considered. *See Schlobohm*, 784 S.W.2d at 358.

■ We must first determine whether Guardian Royal purposefully established "minimum contacts" with Texas; in other words, whether there was a "substantial connection" between Guardian Royal and Texas arising from action or conduct of Guardian Royal purposefully directed toward Texas. The policy and endorsements provided coverage for third party liability occurring anywhere in the world English China did business. Among other things, the policy stated that "[t]he words 'The Insured' wherever they appear shall apply to each party described in the Schedule as

---

**13.** We have previously held that the nonresident defendant must negate all bases of personal jurisdiction. *Zac Smith & Co.*, 734 S.W.2d at 664; *Siskind v. Villa Foundation for Education, Inc.*, 642 S.W.2d at 438.

**14.** *Accord Asahi*, 480 U.S. at 116, 107 S.Ct. at 1035 (Brennan, J., concurring) ("This is one of

those rare cases in which 'minimum requirements inherent in the concept of 'fair play and substantial justice' . . . defeat the reasonableness of jurisdiction even [though] the defendant has purposefully engaged in forum activities.' *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477–78, 85 L Ed 2d 528, 105 S Ct 2174 (1985).").

if a separate insurance had been issued to each...."[15] The endorsements to the policy (1) extended coverage to English China's subsidiaries including Southern Clay and Gonzales Clay, (2) extended the definition of "Insured" to include any associated and subsidiary company of English China anywhere in the world, and (3) deleted the policy's geographical limits. Furthermore, under these facts and circumstances, it is apparent that the nature of the insurance contract between Guardian Royal and English China and its coverage are sufficient to establish that Guardian Royal purposefully established "minimum contacts" with Texas.[16] As the insurer of English China and its approximately 120 subsidiary companies located in many countries in the world including the United States and the issuer of an insurance policy providing coverage for third party liability occurring anywhere in the world English China and its subsidiary companies did business, Guardian Royal could reasonably anticipate the significant risk (if not the probability) that a subsidiary would become involved in disputes and litigation in many countries in the world including any state in the United States. In addition, Guardian Royal could reasonably anticipate the significant risk that an insurance coverage dispute or question with a subsidiary would arise concerning the litigation brought in one of many countries including any state in the United States. Furthermore, the policy language that "[t]he words 'The Insured' wherever they appear shall apply to each [subsidiary] ... as if a separate insurance [policy] had been issued to each [subsidiary]" acknowledges the formation of a significant relationship between Guardian Royal and each subsidiary including Southern Clay. Under these facts and circumstances, we find that Guardian Royal purposefully established "minimum contacts" with Texas.

## VI.

■ Second, we must determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. In making this determination, the following factors, when appropriate, should be considered: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies.[17] *World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. at 564; *Burger King,* 471 U.S. at 477, 105 S.Ct. at 2184; *Asahi,* 480 U.S. at 113, 107 S.Ct. at 1033–34. After a careful analysis of these factors, we conclude that the assertion of personal jurisdiction over Guardian Royal is unreasonable.

Requiring Guardian Royal, an English insurer, to submit its dispute with its English insured to a foreign nation's judicial system is burdensome. All acts concerning the negotiation, implementation and performance of the policy and endorsements (including the payment of premiums) occurred in England. Frequently the interests of the forum state and the plaintiff will justify the severe burden placed upon the nonresident defendant. *See Asahi,* 480 U.S. at 114, 107 S.Ct. at 1033. In this case, however, the interests of Texas in adjudicating the dispute and the English China entities in obtaining convenient and effective relief are minimal. Like California, Texas "has a manifest interest in providing

---

**15.** The "Schedule" of the policy identified "THE INSURED" as "ENGLISH CHINA CLAYS LIMITED and Subsidiary Companies as within specified."

**16.** Since we have determined that Guardian Royal has purposefully established "minimum contacts" with Texas based upon the nature of the insurance contract between Guardian Royal and English China and its coverage, it is not necessary to consider whether Guardian Royal was aware that it was responsible to cover loss-

es arising from a substantial subject of insurance regularly present in Texas.

**17.** Since this is an international dispute and not a dispute between coequal sovereigns in our federal system, we need not consider the interstate judicial system's interest in obtaining the most efficient resolution of controversies or the shared interest of the several states in furthering fundamental substantive social policies.

effective means of redress for its residents when their insurers refuse to pay claims. These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable." *McGee*, 355 U.S. at 223, 78 S.Ct. at 201. However, this is a dispute between two insurers—Guardian Royal and U.S. Fire as subrogee to the rights of the English China entities. Among other things, U.S. Fire is seeking "reimbursement" for its contribution to the settlement of the wrongful death lawsuits against the English China entities. The family of the deceased employee of Southern Clay has been compensated and the English China entities, the insureds, were defended and indemnified. Thus, in reality, U.S. Fire is the real party in interest and neither the family of the deceased employee nor the English China entities have an interest in the outcome of this lawsuit. In addition, since Guardian Royal and U.S. Fire are neither Texas consumers nor insureds, Texas' interest in adjudicating the dispute (including its special interest in regulating insurance) is considerably diminished. While Texas "has a manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims," Texas does not have a compelling interest in providing a forum for resolution of disputes between these insurers. Under these facts and circumstances, we find that the assertion of personal jurisdiction over Guardian Royal is unreasonable and does not comport with fair play and substantial justice. Accordingly, we hold that it is inconsistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over Guardian Royal in this cause.

For the reasons explained herein, we reverse the judgment of the court of appeals and affirm the judgment of the trial court.

MAUZY, J., dissents.

MAUZY, Justice, dissenting.

I respectfully dissent. The pertinent inquiry in this due process analysis is whether, based upon the conduct of Guardian Royal, it would have been reasonably foreseeable that the Company would be "haled into court" in Texas. *See, World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) An insurer should foresee being sued in any jurisdiction in which its insured has substantial contacts. *Eli Lilly and Co. v. Home Ins. Co.* 794 F.2d 710, 721 (D.C.Cir.1986), *cert. denied*, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 990, 991 (1981). In the endorsements to the English China policy, Guardian Royal extended coverage to the Texas subsidiaries Southern Clay and Gonzales Clay, extended the definition of "Insured" to include any subsidiary of English China anywhere in the world, and specifically deleted the policy's geographical limits. Clearly, Guardian Royal should have foreseen being "haled into court" in a jurisdiction where English China subsidiaries are located.

Insurance companies offer broad-based coverage to induce customers to buy policies and pay higher premiums for them. Substantial financial benefits may accrue to companies which offer such policies. If Guardian Royal had desired to avoid suit in Texas, it could have refused to insure entities located in Texas and refused to provide coverage for acts occurring in Texas. As was the case in *Rossman v. State Farm Mutual Auto Ins. Co.*, 832 F.2d 282 (4th Cir.1987), Guardian Royal's willingness to being haled into court in a foreign state was an express, and very marketable, feature of its policy. *Id.* at 286. The company's contacts with the state of Texas cannot be viewed as "random" or "fortuitous." Since Guardian Royal purposefully availed itself of the privilege of conducting business with English China and its Texas subsidiaries, it now has the burden of presenting "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528, 543–44 (1985).[1]

1. It should be noted that the Uniform Interstate and International Procedure Act, 13 Uniform

There is no such compelling case here. In determining reasonableness of the exercise of jurisdiction in a case, the court should evaluate several factors. The court must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 113–115, 107 S.Ct. 1026, 1033–34, 94 L.Ed.2d 92, 105 (1987). The insured subsidiaries in this case, Southern Clay and Gonzales Clay are Texas corporations and their principal places of business are in Texas. Texas has a manifest interest in providing a forum for its residents. The fact that United States Fire Insurance Company subrogated to the interests of the insured should not be relevant. A subrogee "stands in the shoes" of his subrogor. *Fox v. Kroeger*, 119 Tex. 511, 35 S.W.2d 679, 681 (Tex. 1931). This holding extends to procedural as well as substantive matters. *See Seale v. Hudgens*, 538 S.W.2d 459, 460 (Tex.Civ. App.—San Antonio 1976, writ dism'd) (venue). The result here should be no different than if Gonzales Clay and Southern Clay brought this lawsuit directly, rather than as subrogees. Texas has an interest in encouraging subrogation since it facilitates recovery of injured plaintiffs and functions to distribute the incidence of loss in accordance with responsibility for the loss. Considering Guardian Royal's purposeful contacts with the state, it cannot be said that the exercise of jurisdiction does not comport with fair play and substantial justice. I would affirm the decision of the court of appeals.

Laws Ann. 361 (Master Ed.1986), which has been adopted by several states provides:

§ 1.03 [Personal Jurisdiction Based Upon Conduct]

(a) A court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a [cause of action] [claim for relief] arising from the person's

. . . .

(6) Contracting to insure any person, property, or risk located within this state at the time of contracting.

Under the provisions of the act, Guardian Royal would have subjected itself to state court jurisdiction solely by reason of its contracting to insure Gonzales Clay and Southern Clay.