COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                 FORT
WORTH

 

 

                                        NO.
 2-05-254-CV

 

 

PAMELA BURNHAM                                                             APPELLANT

 

                                                   V.

 

CHRISTOPHER SCOTT EWIN                                                    APPELLEE

 

                                              ------------

 

           FROM
THE 342ND DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

I.  Introduction

This is an appeal from an
order denying a Rule 120a special appearance filed by Appellant Pamela Burnham,
contesting the jurisdiction of the court. 
We affirm.

 








II.  Background

This is the case of the South
Beach solicitation.  Thomas Burnham was
an adjunct professor at the University of Dallas beginning in 1993, teaching
franchising, international markets, and small business management.  On occasion, his wife Pamela, a Virginia resident,  would come to Dallas to assist him with his
teaching duties.  Christopher Ewin is a
family practice physician who met the Burnhams through a mutual friend.  The amount of contact between Ewin and
Pamela, and the extent and nature of communication between them, is disputed.








According to Ewin, in his AAffidavit of Christopher Ewin, M.D.,@ he first became involved with the Burnhams at meetings on August 8,
1996, and September 5, 1996, wherein Thomas discussed South Beach Café, Inc.
and the Sarasota Investment Group. 
Pamela was promoted by her husband as an active participant in their
business activities, and as a result of solicitations and assurances by the Burnhams,
Ewin made a $70,000 investment with them. 
In December 1996, another meeting was held at the Ewins= home wherein Pamela endorsed Thomas=s representations regarding the Dallas Investment Group.  In the fall of the following year, the Ewins
and the Burnhams had dinner at a Dallas restaurant to discuss the Ewins= investment in the South Beach Café, and wherein Pamela concurred in
her husband=s
discussions of the concept of multiple corporations under the South Beach Café
umbrella.  At this meeting, the Ewins
were informed that the Burnhams had taken Domino=s Pizza into international markets. 
The Burnhams said that Pamela was solely responsible for the pizza chain=s success in Europe, and that Pamela, according to her own statements,
was an active participant in their proposed business activities and investments
and would repeat her Domino=s success with South Beach.  At
another meeting in August 1998, another pitch for investment was made by the
Burnhams to the Ewins regarding another restaurant concept called Cisco and
Pancho, wherein Pamela made representations concerning the potential value of
the stock.  As a result, the Ewins were
about to make an additional investment, which at that point would total $275,000,
with the Burnhams.  The Ewins later had
second thoughts about the investments, but after communicating those to the
Burnhams, the Ewins forwarded the checks to the Burhams.  Another meeting occurred in a gas
station/pizza store in north Dallas, the purpose of which was to review the
Ewin investments, and was attended by the Burnhams.  Dr. Ewin also received a letter dated January
4, 2001, signed by Pamela as a director of South Beach Concepts, Inc., and an
e-mail from Pamela, dated April 30, 2003, promising return of the Ewin
investments.  Dr. Ewin sued the Burnhams
and the University of Dallas over the investments in 2005.








Pamela has a different
recollection of events as they relate to the Ewins.  She maintains in her AAffidavit in Support of Special Appearance,@ filed in connection with APamela H. Burnham=s Special Appearance, Motion to Transfer Venue and Original Answer
Subject Thereto,@ that she is
a resident of Virginia, has never been a resident of Texas, owns no property in
Texas, and has never had an office in Texas. 
She acknowledges being in Dallas to assist her husband with his classes
on four to six occasions but never attempted to raise money from his students
and did not provide anyone with materials regarding their investment
ventures.  She met Dr. Ewin twice, once
at dinner where his previous investment in South Beach was discussed.  She did not solicit any investment in any
venture at this meeting.  She also met
Dr. Ewin at his home in 1998 on a social occasion, and did not attempt to sell
Dr. Ewin or his family an investment in any venture, did not provide him any
investment materials, and did not receive any investment funds.

III.  Procedural Background








The trial court denied Pamela=s special appearance by order dated June 17, 2005, and this
interlocutory appeal followed.  She
requested that the trial court make findings of fact and conclusions of law on
June 20, 2005, and at the court=s behest, provided case law authority for the request, but the record
does not reflect that the requested findings and conclusions were made by the
court.  The interlocutory order granting
or denying a Rule 120a special appearance is reviewable by this court.  Tex.
Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7) (Vernon Supp. 2005).

IV.  Standard of Review

Whether
a court has personal jurisdiction over a defendant is a question of law.  See Hotel Partners v. Craig, 993
S.W.2d 116, 120 (Tex. App.CDallas 1994, writ denied)
(stating that this Court=s
decision in Guardian Royal Exch. Assurance, Ltd. v. English China Clays,
P.L.C., 815 S.W.2d 223, 226 (Tex. 1991), suggests that personal
jurisdiction is a legal question). 
However, the trial court frequently must resolve questions of fact
before deciding the jurisdiction question. 
When a trial court does not issue findings of fact and conclusions of
law with its special appearance ruling, all facts necessary to support the
judgment and supported by the evidence are implied.  When the appellate record includes the
reporter=s and
clerk=s
records, these implied findings are not conclusive and may be challenged for
legal and factual sufficiency in the appropriate appellate court. 

 

BMC Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794-95 (Tex. 2002) (citations omitted).  In other words, if Aas here, the trial court does not issue findings of fact and
conclusions of law and the record includes the reporter=s and clerk=s records,
we review the trial court=s resolution
of disputed fact issues for legal and factual sufficiency and its legal
conclusions de novo.@  Yfantis v. Balloun, 115 S.W.3d 175,
179 (Tex. App.CFort Worth
2003, no pet.).

 








V.  Personal Jurisdiction

Texas courts may assert personal jurisdiction
over a nonresident defendant only if the Texas long-arm statute authorizes
jurisdiction and the exercise of jurisdiction is consistent with federal and
state due process standards.  Guardian
Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223,
226 (Tex. 1991).  The Texas long‑arm
statute reaches Aas
far as the federal constitutional requirements of due process will allow.@  Id. 
Thus, the Texas long‑arm statute requirements are satisfied if
exercising jurisdiction comports with federal due process limitations.  Id.

The plaintiff bears the initial burden of
pleading sufficient allegations to bring a nonresident defendant within the
provisions of the long‑arm statute. 
BMC Software, 83 S.W.3d at 793; McKanna v. Edgar, 388
S.W.2d 927, 930 (Tex. 1965).  A defendant
who challenges a trial court=s exercise of personal
jurisdiction through a special appearance bears the burden of negating all
jurisdictional bases.  Kawasaki Steel
Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Fish, 948
S.W.2d at 891.  We rely on precedent from
the United States Supreme Court as well as our own state=s
decisions in determining whether a nonresident defendant has met its
burden.  BMC Software, 83 S.W.3d
at 795.

Under the Due Process Clause of the Fourteenth
Amendment, jurisdiction is proper if a nonresident defendant established Aminimum
contacts@ with
Texas and maintenance of the suit does not offend Atraditional
notions of fair play and substantial justice.@
Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.
Ct. 154, 158, 90 L. Ed. 95 (1945).  The
purpose of the minimum‑contacts analysis is to protect the defendant from
being haled into court when its relationship with Texas is too attenuated to
support jurisdiction.  Schlobohm v.
Schapiro, 784 S.W.2d 355, 357 (Tex. 1990). 
Accordingly, we focus upon the defendant=s
activities and expectations in deciding whether it is proper to call him before
a Texas court.  Id.








The minimum‑contacts analysis requires that
a defendant Apurposefully
avail@
himself of the privilege of conducting activities within Texas, thus invoking
the benefits and protections of our laws. 
Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475‑76, 105
S. Ct. 2174, 2183‑84, 85 L. Ed. 2d 528 (1985).  The defendant's activities, whether they
consist of direct acts within Texas or conduct outside Texas, must justify a
conclusion that the defendant could reasonably anticipate being called into a
Texas court.  World‑Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L.
Ed. 2d 490 (1980).  A defendant is not
subject to jurisdiction here if his Texas contacts are random, fortuitous, or
attenuated.  See Guardian Royal,
815 S.W.2d at 226.  Nor can a defendant
be haled into a Texas court for the unilateral acts of a third party.  Id. at 227.  It is the quality and nature of the defendant=s
contacts, rather than their number, that is important to the minimum‑contacts
analysis.  Am. Type Culture
Collection, Inc. v. Coleman, 83 S.W.3d 801, 808 (Tex. 2002), cert.
denied, 537 U.S. 1191, 123 S. Ct. 1271, 154 L. Ed. 2d 1025 (2003).

 

Yfantis, 115
S.W.3d at 179-80.

VI.  Application

A.  Objections to Affidavit

In her first issue, Pamela
asserts error on the part of the trial court in overruling objections to Dr.
Ewin=s affidavit filed in opposition to Pamela=s special appearance, which objections were each overruled orally from
the bench during the hearing on the special appearance.  What is required of the statements in this
affadavit?  As pointed out by Ewin,








We do
not construe this rule as requiring that the affidavit must affirmatively show
upon its face that the affiant had personal knowledge of the facts sworn to,
nor that proof of the hearsay character of affiant=s
knowledge which is not apparent on the face of the affidavit, will render it
legally insufficient.  On the contrary,
we hold that the requirements of the rule are met by an affidavit which is
clear, definite, and unequivocal, and that unless there is something in the
affidavit itself to indicate to the contrary, we are bound to accept it for
what it appears on its face to be.

 

Omniplan, Inc. v. New Am. Dev. Corp., 523 S.W.2d 301, 304 (Tex. Civ. App.CWaco 1975, no writ).








A review of the objections
and the Ewin affidavit shows that portions of paragraphs two through six are
alleged not to be direct, clear and unequivocal.  We have reviewed these paragraphs in the
context of the whole affidavit, and under the abuse of discretion standard
utilized to review evidentiary rulings, do not find the trial court abused its
discretion, and we overrule that part of Pamela=s first issue.  Portions of
paragraph one (AMr. Burnham
. . . had recruited Serena Cole . . . to solicit investors for him in one or
more restaurant concepts@) and
paragraph five (APamela
Burnham stated that we were  verbally
bound and legally committed due to the agreements reached between the Burnhams
and us in Tarrant County, Texas, and demanded that my wife send her the checks
for the investment funds from Texas to comply with the agreement@) were objected to as hearsay. 
This latter statement taken in context appears to be in a telephone
conversation between Pamela Burnham and Kelly Ewin.  We hold that the trial court did abuse its
discretion with respect to these hearsay statements and sustain Pamela=s first issue in this regard. 
Finally, Pamela lodged relevancy objections to paragraphs six through
nine.  After having examined these
objections in the context of the entire affidavit, we do not find that the
trial court abused its discretion in overruling these objections and overrule
Pamela=s first issue in that respect. 
In sum, we sustain Pamela Burnham=s first issue with respect to the two hearsay objections and overrule
the remainder of her issue.

B. Denial of the Special
Appearance

In her second issue, Pamela
asserts error on the part of the trial court in denying her special appearance.  








While not articulated as
such, we will treat Pamela=s issue as a challenge to the legal and factual sufficiency of the
evidence, and a challenge to the resulting legal conclusion that the trial
court acquired jurisdiction over Pamela.  A
legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence
of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact;
(3) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (4) the evidence establishes conclusively the opposite of a vital
fact.  Uniroyal Goodrich Tire Co. v.
Martinez, 977 S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S.
1040 (1999); Robert W. Calvert, "No
Evidence" and "Insufficient Evidence" Points of Error,
38 TEX. L. REV. 361, 362-63 (1960).  In determining whether there is legally
sufficient evidence to support the finding under review, we must consider
evidence favorable to the finding if a reasonable factfinder could, and
disregard evidence contrary to the finding unless a reasonable factfinder could
not.  City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). 

An assertion that the
evidence is factually insufficient to support a fact finding means that the
evidence supporting the finding is so weak or the evidence to the contrary is
so overwhelming that the answer should be set aside and a new trial ordered.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  We are required to consider
all of the evidence in the case in making this determination, not just the
evidence that supports the finding.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex.), cert. denied,
525 U.S. 1017 (1998).  The only evidence
before us, as in the trial court, are the affidavits of Pamela and Ewin.








There are two types of
jurisdiction: specific and general. 
Schlobohm v. Schapiro, 784 S.W.2d 355, 358 (Tex. 1990).  Specific jurisdiction arises when a defendant
commits some act in Texas that gives rise to the cause of action asserted
against him.  Id.  AWhen specific jurisdiction is asserted, the minimum contacts analysis focuses
on the relationship among the defendant, the forum, and the litigation.@  Yfantis, 115 S.W.3d at
180.  General jurisdiction arises when a
defendant=s contacts
with Texas are continuing and systematic. 
AGeneral jurisdiction is only present, however, when a defendant=s contacts with a forum are continuous and systematic, a more
demanding minimum-contacts analysis than specific jurisdiction.@  Id.  In general jurisdiction cases, the court can
exercise jurisdiction over a defendant even if the cause of action asserted
does not arise from the defendant=s acts in Texas.  Temperature
Sys., Inc. v. Bill Pepper, Inc., 854 S.W.2d 669, 673 (Tex. App.CDallas 1993, dism=d by agr.).  After reviewing the
evidence before the trial court and applying the appropriate standards of
review, we hold that the evidence is legally and factually sufficient to
support the implied findings of the trial court and that the trial court
acquired jurisdiction over Pamela.  As
such, we overrule Pamela=s second
issue.  

VII.  Conclusion

Having sustained Pamela=s first issue in part but overruled her second issue, we affirm the
trial court=s judgment.

 

 

BOB MCCOY

JUSTICE

 

PANEL A:   CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

 

DELIVERED:
February 23, 2006











[1]See Tex. R.
App. P. 47.4.