BURNHAM V. EWIN

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-254-CV

PAMELA BURNHAM APPELLANT

V.

CHRISTOPHER SCOTT EWIN APPELLEE

------------

FROM THE 342ND DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I.  Introduction

This is an appeal from an order denying a Rule 120a special appearance filed by Appellant Pamela Burnham, contesting the jurisdiction of the court.  We affirm.

II.  Background

This is the case of the South Beach solicitation.  Thomas Burnham was an adjunct professor at the University of Dallas beginning in 1993, teaching franchising, international markets, and small business management.  On occasion, his wife Pamela, a Virginia resident,  would come to Dallas to assist him with his teaching duties.  Christopher Ewin is a family practice physician who met the Burnhams through a mutual friend.  The amount of contact between Ewin and Pamela, and the extent and nature of communication between them, is disputed.

According to Ewin, in his “Affidavit of Christopher Ewin, M.D.,” he first became involved with the Burnhams at meetings on August 8, 1996, and September 5, 1996, wherein Thomas discussed South Beach Café, Inc. and the Sarasota Investment Group.  Pamela was promoted by her husband as an active participant in their business activities, and as a result of solicitations and assurances by the Burnhams, Ewin made a $70,000 investment with them.  In December 1996, another meeting was held at the Ewins’ home wherein Pamela endorsed Thomas’s representations regarding the Dallas Investment Group.  In the fall of the following year, the Ewins and the Burnhams had dinner at a Dallas restaurant to discuss the Ewins’ investment in the South Beach Café, and wherein Pamela concurred in her husband’s discussions of the concept of multiple corporations under the South Beach Café umbrella.  At this meeting, the Ewins were informed that the Burnhams had taken Domino’s Pizza into international markets.  The Burnhams said that Pamela was solely responsible for the pizza chain’s success in Europe, and that Pamela, according to her own statements, was an active participant in their proposed business activities and investments and would repeat her Domino’s success with South Beach.  At another meeting in August 1998, another pitch for investment was made by the Burnhams to the Ewins regarding another restaurant concept called Cisco and Pancho, wherein Pamela made representations concerning the potential value of the stock.  As a result, the Ewins were about to make an additional investment, which at that point would total $275,000, with the Burnhams.  The Ewins later had second thoughts about the investments, but after communicating those to the Burnhams, the Ewins forwarded the checks to the Burhams.  Another meeting occurred in a gas station/pizza store in north Dallas, the purpose of which was to review the Ewin investments, and was attended by the Burnhams.  Dr. Ewin also received a letter dated January 4, 2001, signed by Pamela as a director of South Beach Concepts, Inc., and an e-mail from Pamela, dated April 30, 2003, promising return of the Ewin investments.  Dr. Ewin sued the Burnhams and the University of Dallas over the investments in 2005.

Pamela has a different recollection of events as they relate to the Ewins.  She maintains in her “Affidavit in Support of Special Appearance,” filed in connection with “Pamela H. Burnham’s Special Appearance, Motion to Transfer Venue and Original Answer Subject Thereto,” that she is a resident of Virginia, has never been a resident of Texas, owns no property in Texas, and has never had an office in Texas.  She acknowledges being in Dallas to assist her husband with his classes on four to six occasions but never attempted to raise money from his students and did not provide anyone with materials regarding their investment ventures.  She met Dr. Ewin twice, once at dinner where his previous investment in South Beach was discussed.  She did not solicit any investment in any venture at this meeting.  She also met Dr. Ewin at his home in 1998 on a social occasion, and did not attempt to sell Dr. Ewin or his family an investment in any venture, did not provide him any investment materials, and did not receive any investment funds.

III.  Procedural Background

The trial court denied Pamela’s special appearance by order dated June 17, 2005, and this interlocutory appeal followed.  She requested that the trial court make findings of fact and conclusions of law on June 20, 2005, and at the court’s behest, provided case law authority for the request, but the record does not reflect that the requested findings and conclusions were made by the court.  The interlocutory order granting or denying a Rule 120a special appearance is reviewable by this court.  
Tex. Civ. Prac. & Rem. Code Ann.
 § 51.014(a)(7) (Vernon Supp. 2005).

IV.  Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law.  
See Hotel Partners v. Craig
, 993 S.W.2d 116, 120 (Tex. App.—Dallas 1994, writ denied) (stating that this Court’s decision in 
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.
, 815 S.W.2d 223, 226 (Tex. 1991), suggests that personal jurisdiction is a legal question).  However, the trial court frequently must resolve questions of fact before deciding the jurisdiction question.  
When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied.  
When the appellate record includes the reporter’s and clerk’s records, these implied findings are not conclusive and may be challenged for legal and factual sufficiency in the appropriate appellate court. 

BMC Software Belg., N.V. v. Marchand
, 83 S.W.3d 789, 794-95 (Tex. 2002) (citations omitted).  In other words, if “as here, the trial court does not issue findings of fact and conclusions of law and the record includes the reporter’s and clerk’s records, we review the trial court’s resolution of disputed fact issues for legal and factual sufficiency and its legal conclusions de novo.”  
Yfantis v. Balloun
, 115 S.W.3d 175, 179 (Tex. App.—Fort Worth 2003, no pet.).

V.  Personal Jurisdiction

Texas courts may assert personal jurisdiction over a nonresident defendant only if the Texas long-arm statute authorizes 
jurisdiction and the exercise of jurisdiction is consistent with federal and state due process standards.  
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.
, 815 S.W.2d 223, 226 (Tex. 1991).  The Texas long-arm statute reaches “as far as the federal constitutional requirements of due process will allow.”  
Id.
  Thus, the Texas long-arm statute requirements are satisfied if exercising jurisdiction comports with federal due process limitations.  
Id.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute.  
BMC Software
, 83 S.W.3d at 793; 
McKanna v. Edgar
, 388 S.W.2d 927, 930 (Tex. 1965).  A defendant who challenges a trial court’s exercise of personal jurisdiction through a special appearance bears the burden of negating all jurisdictional bases.  
Kawasaki Steel Corp. v. Middleton
, 699 S.W.2d 199, 203 (Tex. 1985); 
Fish
, 948 S.W.2d at 891.  We rely on precedent from the United States Supreme Court as well as our own state’s decisions in determining whether a nonresident defendant has met its burden.  
BMC Software
, 83 S.W.3d at 795.

Under the Due Process Clause of the Fourteenth Amendment, jurisdiction is proper if a nonresident defendant established “minimum contacts” with Texas and maintenance of the suit does not offend “traditional notions of fair play and substantial justice.”
 Int'l Shoe Co. v. Washington
, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945).  The purpose of the minimum-contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction.  
Schlobohm v. Schapiro
, 784 S.W.2d 355, 357 (Tex. 1990).  Accordingly, we focus upon the defendant’s activities and expectations in deciding whether it is proper to call him before a Texas court.  
Id
.

The minimum-contacts analysis requires that a defendant “purposefully avail” himself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws.  
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 475-76, 105 S. Ct. 2174, 2183-84, 85 L. Ed. 2d 528 (1985).  The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court.  
World-Wide Volkswagen Corp. v. Woodson
, 444 U.S. 286, 297, 100 S. Ct. 559, 567, 62 L. Ed. 2d 490 (1980).  A defendant is not subject to jurisdiction here if his Texas contacts are random, fortuitous, or attenuated.  
See Guardian Royal
, 815 S.W.2d at 226.  Nor can a defendant be haled into a Texas court for the unilateral acts of a third party.  
Id. 
at 227.  It is the quality and nature of the defendant’s contacts, rather than their number, that is important to the minimum-contacts analysis.  
Am. Type Culture Collection, Inc. v. Coleman
, 83 S.W.3d 801, 808 (Tex. 2002), 
cert. denied
, 537 U.S. 1191, 123 S. Ct. 1271, 154 L. Ed. 2d 1025 (2003).

Yfantis
, 115 S.W.3d at 179-80.

VI.  Application

A.  Objections to Affidavit

In her first issue, Pamela asserts error on the part of the trial court in overruling objections to Dr. Ewin’s affidavit filed in opposition to Pamela’s special appearance, which objections were each overruled orally from the bench during the hearing on the special appearance.  What is required of the statements in this affadavit?  As pointed out by Ewin,

We do not construe this rule as requiring that the affidavit must affirmatively show upon its face that the affiant had personal knowledge of the facts sworn to, nor that proof of the hearsay character of affiant’s knowledge which is not apparent on the face of the affidavit, will render it legally insufficient.  On the contrary, we hold that the requirements of the rule are met by an affidavit which is clear, definite, and unequivocal, and that unless there is something in the affidavit itself to indicate to the contrary, we are bound to accept it for what it appears on its face to be.

Omniplan, Inc. v. New Am. Dev. Corp
., 523 S.W.2d 301, 304 (Tex. Civ. App.—Waco 1975, no writ).

A review of the objections and the Ewin affidavit shows that portions of paragraphs two through six are alleged not to be direct, clear and unequivocal.  We have reviewed these paragraphs in the context of the whole affidavit, and under the abuse of discretion standard utilized to review evidentiary rulings, do not find the trial court abused its discretion, and we overrule that part of Pamela’s first issue.  Portions of paragraph one (“Mr. Burnham . . . had recruited Serena Cole . . . to solicit investors for him in one or more restaurant concepts”) and paragraph five (“Pamela Burnham stated that we were  verbally bound and legally committed due to the agreements reached between the Burnhams and us in Tarrant County, Texas, and demanded that my wife send her the checks for the investment funds from Texas to comply with the agreement”) were objected to as hearsay.  This latter statement taken in context appears to be in a telephone conversation between Pamela Burnham and Kelly Ewin.  We hold that the trial court did abuse its discretion with respect to these hearsay statements and sustain Pamela’s first issue in this regard.  Finally, Pamela lodged relevancy objections to paragraphs six through nine.  After having examined these objections in the context of the entire affidavit, we do not find that the trial court abused its discretion in overruling these objections and overrule Pamela’s first issue in that respect.  In sum, we sustain Pamela Burnham’s first issue with respect to the two hearsay objections and overrule the remainder of her issue.

B. Denial of the Special Appearance

In her second issue, Pamela asserts error on the part of the trial court in denying her special appearance.  

While not articulated as such, we will treat Pamela’s issue as a challenge to the legal and factual sufficiency of the evidence, and a challenge to the resulting legal conclusion that the trial court acquired jurisdiction over Pamela. 
 A legal sufficiency challenge may only be sustained when:  (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.  
Uniroyal Goodrich Tire Co. v. Martinez
, 977 S.W.2d 328, 334 (Tex. 1998),
 cert. denied
, 526 U.S. 1040 (1999);
 Robert W. Calvert, 
"No Evidence"
 
and "Insufficient Evidence" Points of Error
, 38 T
EX
. L. R
EV
. 361, 362-63 (1960)
.  In determining whether there is legally sufficient evidence to support the finding under review, we must consider evidence favorable to the finding if a reasonable factfinder could, and disregard evidence contrary to the finding unless a reasonable factfinder could not.
  
City of Keller v. Wilson
, 
168 S.W.3d 802, 827
 (Tex. 2005). 

An assertion that the evidence is factually insufficient to support a fact finding means that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the answer should be set aside and a new trial ordered.  
Garza v. Alviar
, 395 S.W.2d 821, 823 (Tex. 1965).  We are required to consider all of the evidence in the case in making this determination, not just the evidence that supports the finding.  
Mar. Overseas Corp. v. Ellis
, 971 S.W.2d 402, 406-07 (Tex.), 
cert. denied
, 525 U.S. 1017 (1998).  The only evidence before us, as in the trial court, are the affidavits of Pamela and Ewin.

There are two types of jurisdiction: specific and general.
  Schlobohm v. Schapiro
, 784 S.W.2d 355, 358 (Tex. 1990).  Specific jurisdiction arises when a defendant commits some act in Texas that gives rise to the cause of action asserted against him.  
Id
.  “When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship among the defendant, the forum, and the litigation.”  
Yfantis
, 115 S.W.3d at 180.  General jurisdiction arises when a defendant’s contacts with Texas are continuing and systematic.  “General jurisdiction is only present, however, when a defendant’s contacts with a forum are continuous and systematic, a more demanding minimum-contacts analysis than specific jurisdiction.”  
Id
.  In general jurisdiction cases, the court can exercise jurisdiction over a defendant even if the cause of action asserted does not arise from the defendant’s acts in Texas.  
Temperature Sys., Inc. v. Bill Pepper, Inc., 
854 S.W.2d 669, 673 (Tex. App.—Dallas 1993, dism’d by agr.).  After reviewing the evidence before the trial court and applying the appropriate standards of review, we hold that the evidence is legally and factually sufficient to support the implied findings of the trial court and that the trial court acquired jurisdiction over Pamela.  As such, we overrule Pamela’s second issue.  

VII.  Conclusion

Having sustained Pamela’s first issue in part but overruled her second issue, we affirm the trial court’s judgment.

BOB MCCOY

JUSTICE

PANEL A: CAYCE, C.J.; DAUPHINOT and MCCOY, JJ.

DELIVERED: February 23, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.