CONN V. DIAMOND

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-05-344-CV

BRIAN MITCHELL CONN APPELLANT

V.

TIM DIAMOND APPELLEE

------------

FROM THE 324TH DISTRICT COURT OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

Appellant Brian Mitchell Conn, a Texas resident, sued Appellee Tim Diamond, a Michigan resident, alleging that Diamond conspired with other defendants to disseminate confidential documents to persons in Texas, thereby invading Conn’s privacy and intentionally inflicting emotional distress on him.  Diamond filed a special appearance, which the trial court granted.  Conn filed this interlocutory appeal.  We reverse and remand.

Background

We note at the outset that the evidentiary record before us is meager.  A court must determine a “special appearance on the basis of the pleadings, any stipulations . . . , such affidavits and attachments as may be filed by the parties, the results of discovery processes, and any oral testimony.”  
Tex. R. Civ. P.
 120a(3).  In this case, there was no stipulation, discovery, or oral testimony.  The only documents before the trial court for the purpose of Diamond’s special appearance were Conn’s live petition and Diamond’s affidavit in support of his special appearance.  Though the briefs of the parties in both the trial court and this court and the arguments of counsel at the special appearance hearing allege many facts, our review of the special appearance is restricted to Conn’s petition and Diamond’s affidavit.

In his second amended original petition, Conn alleged that he had been the subject of a criminal prosecution in 1995.  He was found not guilty, and his record was expunged in 2004.  Conn’s lawyer in the criminal prosecution was Randy Eisenberg.  Conn also consulted with Norman Conn, an attorney licensed to practice law in Michigan.  Eisenberg hired a polygraph operator to take Conn’s polygraph.  The polygraph operator reported the results in a letter to Eisenberg.  Conn provided a copy of the polygraph result to Norman Conn, who later died.  Thereafter, Diamond and the other Michigan defendants somehow came into possession of the polygraph results.  Conn alleged that he had not disclosed or authorized the disclosure of the letter to third persons other than those to whom disclosure was made in furtherance of the rendition of professional services.

Conn alleged that Norman Conn is deceased and that the “[d]efendants illegally or improperly obtained possession of the subject document and other privileged and/or confidential information . . . and are actively distributing such documents and disclosing the information contained in such documents to others who have no right to the same.”  He further alleged that his ex-wife and other defendants (but not Diamond) have declared their intent to distribute the letter to the counselor for Conn’s child and “others associated with” Conn.   Conn alleged that the defendants conspired to invade his privacy and inflict emotional distress upon him and prayed for damages, exemplary damages, and injunctive relief.

As the basis for jurisdiction over Diamond, Conn alleged as follows:

This court may exercise personal jurisdiction over [other Michigan defendants] and Tim Diamond in that such defendants entered into a civil conspiracy with each other and with [the Texas defendants] to commit a tort within the State of Texas by illegally or improperly obtaining documents from the files of [Conn’s] deceased attorney in [Michigan] and disseminating the illegally obtained documents to persons within the State of Texas . . . for the purpose of causing injury to Plaintiff . . . .

This court may further exercise personal jurisdiction over defendant Tim Diamond for the reason that he has possession of documents and/or information obtained from documents that were illegally or improperly obtained from the files of [Conn’s] deceased attorney, that he has disseminated such documents and/or information to persons in the State of Texas, and that further publication of such documents within the State of Texas is subject to injunctive relief to prevent irreparable harm to [Conn] for which he has no adequate remedy at law. 

Diamond filed a special appearance supported by his own affidavit and a general denial subject to his special appearance.  Diamond’s affidavit averred that he was a Michigan resident; had never been a resident of Texas; had never maintained a personal bank account in Texas; had never paid taxes in Texas; had never owned, leased, rented, or controlled real property in Texas; did not enter into a contract with Conn that contemplated performance in Texas; did not systematically or regularly engage in personal business in Texas; had never knowingly purchased any tangible item or personal property in Texas from a Texas business, citizen, or resident; and had never traveled to Texas for any reason.  

The trial court held a hearing on Diamond’s special appearance; no witnesses testified, and the parties offered no evidence.  The trial court granted Diamond’s special appearance.  No party requested findings of fact or conclusions of law, and the trial court did not make any. 

Standard of Review

Whether a court has personal jurisdiction over a defendant is a question of law.  
Am. Type Culture Collection, Inc. v. Coleman
, 83 S.W.3d 801, 805-06 (Tex. 2002) (citing 
BMC Software Belgium, N.V. v. Marchand
, 83 S.W.3d 789, 794 (Tex. 2002)).  We review the trial court’s order granting or denying a special appearance de novo, though in doing so we may need to review the trial court’s resolution of disputed facts.  
See id.
 at 806.  When the trial court does not issue findings of fact, as in this case, we presume that the trial court resolved all factual disputes in favor of its judgment.  
See id.

Analysis

The Texas long-arm statute governs Texas courts’ exercise of jurisdiction over nonresident defendants in tort actions.  
BMC Software Belgium, N.V.
, 83 S.W.3d at 795; 
see 
Tex. Civ. Prac. & Rem. Code Ann
. §§ 17.041–.044 (Vernon 1997), .045 (Vernon Supp. 2005)
.  
The statute reaches “as far as the federal constitutional requirements of due process will allow.”  
Am. Type Culture Collection, Inc.
, 83 S.W.3d at 806
 (quoting 
Guardian Royal Exch. Assurance, Ltd.
 
v. English China Clays, P.L.C.
, 815 S.W.2d 223, 226 (Tex. 1991)
).  Thus, the Texas long-arm statute requirements are satisfied if exercising jurisdiction comports with federal due process limitations.  
Id.
;
 Guardian Royal Exch. Assurance, Ltd.
, 815 S.W.2d at 226. Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction is proper if:  (1) the nonresident defendant has established “minimum contacts” with Texas and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice.  
Int’l Shoe Co. v. Washington
, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945); 
Am. Type Culture Collection, Inc.
, 83 S.W.3d at 806;
 
BMC Software Belgium, N.V.
, 83 S.W.3d at 795.  

The minimum-contacts analysis requires “‘that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.’”  
Burger King Corp. v. Rudzewicz
, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (quoting 
Hanson v. Denckla, 
357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)).

A defendant’s contacts with a forum can give rise to either specific or general jurisdiction.  
Am. Type Culture Collection, Inc.
, 83 S.W.3d at 806.  For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant’s contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts.  
Id.
  In this case, Conn asserted only specific jurisdiction.

“Purposeful availment” of the privilege of conducting activities in the forum state is the touchstone of jurisdictional due process.  
Michiana Easy Livin’ Country, Inc. v. Holten
, 168 S.W.3d 777, 784 (Tex. 2005) (citing 
Hanson
, 357 U.S. at 253, 78 S. Ct. at 1240).  The three relevant considerations in determining whether this requirement is met are (1) only the defendant’s contacts with the forum count; (2) the acts relied on to establish jurisdiction must be purposeful, rather than random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing himself of the jurisdiction of the forum state.  
Id. 
at 785.  Allegations that a tort was committed in Texas satisfy the Texas long-arm statute,
(footnote: 2) but not necessarily the U.S. Constitution.  
Id.
 at 788.  Specific jurisdiction turns on the defendant’s contacts with Texas, not on whether those contacts were tortious.  
Id.
 at 791-92.  Moreover, it is the quality and nature of the defendant’s contacts, rather than their number, that is important to the minimum-contacts analysis.  
Am. Type Culture Collection, Inc.
, 83 S.W.3d at 806.

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the long-arm statute.  
BMC Software Belgium, N.V.
, 83 S.W.3d at 793 (citing 
McKanna v. Edgar
, 388 S.W.2d 927, 930 (Tex. 1965)).  Once the plaintiff has pleaded sufficient allegations, a defendant challenging a Texas court’s personal jurisdiction must negate all jurisdictional bases.  
BMC Software Belgium, N.V.
, 83 S.W.3d at 793 (citing 
Kawasaki Steel Corp. v. Middleton
, 699 S.W.2d 199, 203 (Tex. 1985)).

Did Diamond negate all bases of jurisdiction?

In his first issue, Conn argues that Diamond failed to negate all bases of jurisdiction.  We agree.

Conn alleged that Diamond committed a tort in Texas by “disseminat[ing] . . . documents and/or information to persons within the State of Texas” for the purpose of injuring Conn.  Thus, Conn alleged a tort committed in part in this state, which is sufficient to satisfy the Texas long-arm statute.  
See Michiana
, 168 S.W.3d at 785; 
Tex. Civ. Prac. & Rem. Code Ann.
 §
 17.042(2). 
Diamond’s special appearance affidavit negated several bases for general jurisdiction but did not address the basis for specific jurisdiction asserted by Conn.  In essence, Diamond’s affidavit proved that he did not engage in commercial activity in Texas but ignored the basis of specific jurisdiction alleged by Conn.  Notably, Diamond failed to address the allegation that he had specific contact with Texas, failed to show that his alleged contact with Texas was not purposeful, and failed to show that he did not reap some benefit, advantage, or profit through his alleged contact with Texas.

Diamond argues that he negated “purposeful availment” because there is no evidence that his alleged conduct “was motivated by a benefit, advantage, or profit from anything or anyone in the State of Texas.”  Diamond misunderstands the special appearance burden of proof.  Once Conn made allegations sufficient to trigger the long-arm statute by pleading a tort committed in Texas, the burden shifted to Diamond to negate jurisdiction.  
See BMC Software Belgium, N.V.
, 83 S.W.3d at 793.  Conn did not have the burden of proving benefit, advantage, or profit; Diamond had the burden of negating it.  This he failed to do.

 Diamond also argues that to negate the specific basis for jurisdiction alleged by Conn would require Diamond to disprove the tort alleged by Conn, in contravention of the supreme court’s holding in 
Michiana.  
Again, we disagree.  In 
Michiana
, the supreme court stated, “[W]e disapprove of those opinions holding that . . . specific jurisdiction turns on whether a defendant’s contacts were tortious rather than the contacts themselves.”  168 S.W.3d at 791-92.  There is a difference between proving that the alleged contact was not tortious and proving that the alleged con
tact does not confer jurisdiction on a Texas court.  While Diamond was not required to negate the tort arising from the contact alleged by Conn, he was required to negate jurisdiction arising from that contact.  The averments in his affidavit fail to do so.

We hold that Diamond failed to negate all possible bases of jurisdiction and sustain Conn’s first issue.

Would exercising jurisdiction over Diamond offend

traditional notions of fair play and substantial justice?

In his second issue, Conn argues that exercising jurisdiction over Diamond would not offend traditional notions of fair play and substantial justice.  Again, we agree.

Once it has been determined that the nonresident defendant purposefully established minimum contacts with Texas, we evaluate the contacts in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice.
 Guardian Royal Exch. Assurance, Ltd. 
, 815 S.W.2d at 228.  These factors include, where applicable,  (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff’s interest in obtaining convenient and effective relief, (4) the interstate judicial system’s interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies.  
Id
. (quoting
 World-Wide Volkswagen Corp. v. Woodson
, 444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980); 
Rudzewicz
, 471 U.S. at 477, 105 S. Ct. at 2184.  Even if the nonresident defendant has purposefully established minimum contacts with the forum state, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case.  
Rudzewicz
, 471 U.S. at 477, 105 S. Ct. at 2184-85;
 Guardian Royal Exch. Assurance, Ltd.
, 815 S.W.2d at 228.  It is the defendant’s burden to present “a compelling case that the presence of some other considerations would render jurisdiction unreasonable.”  
Rudzewicz
, 471 U.S. at 477, 105 S. Ct. at 2185;
 Guardian Royal Exch. Assurance, Ltd.
, 815 S.W.2d at 231.  “Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state.” 
 Guardian Royal Exch. Assurance, Ltd.
, 815 S.W.2d at 231 
(citing 
Rudzewicz
, 471 U.S. at 477-78, 105 S. Ct. at 2185).

The only evidence before us relating to the fair-play factors is Diamond’s averment that he is a Michigan resident.   We assume that litigating in Texas would impose a burden on Diamond, but litigating in a distant forum alone is not ordinarily sufficient to defeat jurisdiction.  
See id.

  The second fair-play factor weighs in favor of maintaining jurisdiction in Texas.  Texas has an interest in adjudicating torts allegedly committed against its citizens.

The third and fourth factors—Conn’s interest in obtaining convenient and effective relief and the interstate judicial system’s interest in obtaining the most efficient resolution of controversies—also weigh in favor of maintaining jurisdiction over Diamond.  Conn has an obvious interest in litigating his claim  in the state where he resides, where several of the other defendants reside, and where he allegedly sustained his damages.  Further, nothing in the record suggests that the Texas defendants are amendable to the jurisdiction of a Michigan court; thus, litigating in Texas promotes the interstate judicial system’s interest in obtaining efficient resolution of Conn’s claims against Diamond and the Texas defendants in a single proceeding.

As for the fifth fair-play factor, we see no substantive social policies implicated by the exercise of jurisdiction over Diamond.

We hold that Diamond failed to “present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.”  
See Rudzewicz
, 471 U.S. at 477, 105 S. Ct. at 2185;
 Guardian Royal Exch. Assurance, Ltd.
, 815 S.W.2d at 231.  Therefore, the trial court erred by granting Diamond’s special appearance.  We sustain Conn’s second issue.  

Conclusion

Having sustained both of Conn’s issues, we reverse the trial court’s order granting Diamond’s special appearance and remand the case to the trial court for further proceedings.

ANNE GARDNER

JUSTICE

PANEL B: DAUPHINOT, HOLMAN, and GARDNER, JJ.

DELIVERED:  April 6, 2006

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Tex. Civ. Prac. & Rem. Code Ann.
 §
 17.042(2) (Vernon 1997).