COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-05-344-CV

 

 

BRIAN MITCHELL CONN                                                       APPELLANT

 

                                                   V.

 

TIM DIAMOND                                                                       APPELLEE

 

                                              ------------

 

           FROM
THE 324TH DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM
OPINION[1]

 

                                              ------------

                                            Introduction








Appellant Brian Mitchell
Conn, a Texas resident, sued Appellee Tim Diamond, a Michigan resident,
alleging that Diamond conspired with other defendants to disseminate
confidential documents to persons in Texas, thereby invading Conn=s privacy and intentionally inflicting emotional distress on him.  Diamond filed a special appearance, which the
trial court granted.  Conn filed this
interlocutory appeal.  We reverse and
remand.

                                            Background

We note at the outset that
the evidentiary record before us is meager. 
A court must determine a Aspecial appearance on the basis of the pleadings, any stipulations . .
. , such affidavits and attachments as may be filed by the parties, the results
of discovery processes, and any oral testimony.@  Tex. R. Civ. P. 120a(3). 
In this case, there was no stipulation, discovery, or oral
testimony.  The only documents before the
trial court for the purpose of Diamond=s special appearance were Conn=s live petition and Diamond=s affidavit in support of his special appearance.  Though the briefs of the parties in both the
trial court and this court and the arguments of counsel at the special
appearance hearing allege many facts, our review of the special appearance is
restricted to Conn=s petition
and Diamond=s affidavit.








In his second amended
original petition, Conn alleged that he had been the subject of a criminal
prosecution in 1995.  He was found not
guilty, and his record was expunged in 2004. 
Conn=s lawyer in
the criminal prosecution was Randy Eisenberg. 
Conn also consulted with Norman Conn, an attorney licensed to practice
law in Michigan.  Eisenberg hired a
polygraph operator to take Conn=s polygraph.  The polygraph
operator reported the results in a letter to Eisenberg.  Conn provided a copy of the polygraph result
to Norman Conn, who later died. 
Thereafter, Diamond and the other Michigan defendants somehow came into
possession of the polygraph results. 
Conn alleged that he had not disclosed or authorized the disclosure of
the letter to third persons other than those to whom disclosure was made in
furtherance of the rendition of professional services.

Conn alleged that Norman Conn
is deceased and that the A[d]efendants
illegally or improperly obtained possession of the subject document and other
privileged and/or confidential information . . . and are actively distributing
such documents and disclosing the information contained in such documents to
others who have no right to the same.@  He further alleged that his
ex-wife and other defendants (but not Diamond) have declared their intent to
distribute the letter to the counselor for Conn=s child and Aothers
associated with@ Conn.   Conn alleged that the defendants conspired
to invade his privacy and inflict emotional distress upon him and prayed for
damages, exemplary damages, and injunctive relief.

As the basis for jurisdiction
over Diamond, Conn alleged as follows:








This court may exercise personal jurisdiction
over [other Michigan defendants] and Tim Diamond in that such defendants
entered into a civil conspiracy with each other and with [the Texas defendants]
to commit a tort within the State of Texas by illegally or improperly obtaining
documents from the files of [Conn=s] deceased attorney in
[Michigan] and disseminating the illegally obtained documents to persons within
the State of Texas . . . for the purpose of causing injury to Plaintiff . . . .

 

This court may further exercise personal
jurisdiction over defendant Tim Diamond for the reason that he has possession
of documents and/or information obtained from documents that were illegally or
improperly obtained from the files of [Conn=s] deceased attorney, that he
has disseminated such documents and/or information to persons in the State of
Texas, and that further publication of such documents within the State of Texas
is subject to injunctive relief to prevent irreparable harm to [Conn] for which
he has no adequate remedy at law. 

 

Diamond filed a special
appearance supported by his own affidavit and a general denial subject to his
special appearance.  Diamond=s affidavit averred that he was a Michigan resident; had never been a
resident of Texas; had never maintained a personal bank account in Texas; had
never paid taxes in Texas; had never owned, leased, rented, or controlled real
property in Texas; did not enter into a contract with Conn that contemplated
performance in Texas; did not systematically or regularly engage in personal
business in Texas; had never knowingly purchased any tangible item or personal
property in Texas from a Texas business, citizen, or resident; and had never
traveled to Texas for any reason.  








The trial court held a
hearing on Diamond=s special
appearance; no witnesses testified, and the parties offered no evidence.  The trial court granted Diamond=s special appearance.  No party
requested findings of fact or conclusions of law, and the trial court did not
make any. 

                                       Standard of Review

Whether a court has personal
jurisdiction over a defendant is a question of law.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 805-06 (Tex. 2002) (citing BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002)).  We review the trial court=s order granting or denying a special appearance de novo, though in
doing so we may need to review the trial court=s resolution of disputed facts. 
See id. at 806.  When the
trial court does not issue findings of fact, as in this case, we presume that
the trial court resolved all factual disputes in favor of its judgment.  See id.

                                               Analysis








The Texas long-arm statute
governs Texas courts= exercise of
jurisdiction over nonresident defendants in tort actions.  BMC Software Belgium, N.V., 83 S.W.3d
at 795; see Tex. Civ. Prac. &
Rem. Code Ann. '' 17.041B.044 (Vernon 1997), .045 (Vernon Supp. 2005).  The statute reaches Aas far as the federal constitutional requirements of due process will
allow.@  Am. Type Culture
Collection, Inc., 83 S.W.3d at 806 (quoting Guardian Royal Exch.
Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226
(Tex. 1991)).  Thus, the Texas long-arm
statute requirements are satisfied if exercising jurisdiction comports with
federal due process limitations.  Id.;
Guardian Royal Exch. Assurance, Ltd., 815 S.W.2d at 226. Under the Due
Process Clause of the Fourteenth Amendment, personal jurisdiction is proper
if:  (1) the nonresident defendant has
established Aminimum
contacts@ with Texas and (2) the exercise of jurisdiction comports with
traditional notions of fair play and substantial justice.  Int=l Shoe Co. v. Washington, 326 U.S.
310, 316, 66 S. Ct. 154, 158 (1945); Am. Type Culture Collection, Inc.,
83 S.W.3d at 806; BMC Software Belgium, N.V., 83 S.W.3d at 795.  

The minimum-contacts analysis
requires A>that there be some act by which the defendant purposefully avails
itself of the privilege of conducting activities within the forum State, thus
invoking the benefits and protections of its laws.=@  Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985) (quoting Hanson
v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)).

A defendant=s contacts with a forum can give rise to either specific or general
jurisdiction.  Am. Type Culture
Collection, Inc., 83 S.W.3d at 806. 
For a court to exercise specific jurisdiction over a nonresident
defendant, two requirements must be met: (1) the defendant=s contacts with the forum must be purposeful, and (2) the cause of
action must arise from or relate to those contacts.  Id. 
In this case, Conn asserted only specific jurisdiction.








APurposeful
availment@ of the
privilege of conducting activities in the forum state is the touchstone of
jurisdictional due process.  Michiana
Easy Livin= Country,
Inc. v. Holten, 168 S.W.3d 777, 784 (Tex.
2005) (citing Hanson, 357 U.S. at 253, 78 S. Ct. at 1240).  The three relevant considerations in
determining whether this requirement is met are (1) only the defendant=s contacts with the forum count; (2) the acts relied on to establish
jurisdiction must be purposeful, rather than random, isolated, or fortuitous;
and (3) the defendant must seek some benefit, advantage, or profit by availing
himself of the jurisdiction of the forum state. 
Id. at 785.  Allegations
that a tort was committed in Texas satisfy the Texas long-arm statute,[2]
but not necessarily the U.S. Constitution. 
Id. at 788.  Specific
jurisdiction turns on the defendant=s contacts with Texas, not on whether those contacts were
tortious.  Id. at 791-92.  Moreover, it is the quality and nature of the
defendant=s contacts,
rather than their number, that is important to the minimum‑contacts
analysis.  Am. Type Culture
Collection, Inc., 83 S.W.3d at 806.








The plaintiff bears the
initial burden of pleading sufficient allegations to bring a nonresident
defendant within the provisions of the long-arm statute.  BMC Software Belgium, N.V., 83 S.W.3d
at 793 (citing McKanna v. Edgar, 388 S.W.2d 927, 930 (Tex. 1965)).  Once the plaintiff has pleaded sufficient
allegations, a defendant challenging a Texas court=s personal jurisdiction must negate all jurisdictional bases.  BMC Software Belgium, N.V., 83 S.W.3d
at 793 (citing Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203
(Tex. 1985)).

                      Did Diamond negate all bases of
jurisdiction?

In his first issue, Conn
argues that Diamond failed to negate all bases of jurisdiction.  We agree.

Conn alleged that Diamond
committed a tort in Texas by Adisseminat[ing] . . . documents and/or information to
persons within the State of Texas@ for the purpose of injuring Conn. 
Thus, Conn alleged a tort committed in part in this state, which is
sufficient to satisfy the Texas long-arm statute.  See Michiana, 168 S.W.3d at 785; Tex. Civ. Prac. & Rem. Code Ann. ' 17.042(2). Diamond=s special appearance affidavit negated several bases for general
jurisdiction but did not address the basis for specific jurisdiction asserted
by Conn.  In essence, Diamond=s affidavit proved that he did not engage in commercial activity in
Texas but ignored the basis of specific jurisdiction alleged by Conn.  Notably, Diamond failed to address the
allegation that he had specific contact with Texas, failed to show that his
alleged contact with Texas was not purposeful, and failed to show that he did
not reap some benefit, advantage, or profit through his alleged contact with
Texas.








Diamond argues that he
negated Apurposeful availment@ because there is no evidence that his alleged conduct Awas motivated by a benefit, advantage, or profit from anything or
anyone in the State of Texas.@  Diamond misunderstands the
special appearance burden of proof.  Once
Conn made allegations sufficient to trigger the long-arm statute by pleading a
tort committed in Texas, the burden shifted to Diamond to negate
jurisdiction.  See BMC Software
Belgium, N.V., 83 S.W.3d at 793. 
Conn did not have the burden of proving benefit, advantage, or profit;
Diamond had the burden of negating it. 
This he failed to do.

        Diamond also argues that to negate the
specific basis for jurisdiction alleged by Conn would require Diamond to
disprove the tort alleged by Conn, in contravention of the supreme court=s holding in Michiana.  Again,
we disagree.  In Michiana, the
supreme court stated, A[W]e
disapprove of those opinions holding that . . . specific jurisdiction turns on
whether a defendant=s contacts
were tortious rather than the contacts themselves.@  168 S.W.3d at 791-92.  There is a difference between proving that
the alleged contact was not tortious and proving that the alleged contact does
not confer jurisdiction on a Texas court. 
While Diamond was not required to negate the tort arising from the
contact alleged by Conn, he was required to negate jurisdiction arising from
that contact.  The averments in his
affidavit fail to do so.








We hold that Diamond failed
to negate all possible bases of jurisdiction and sustain Conn=s first issue.

                   Would
exercising jurisdiction over Diamond offend

                 traditional
notions of fair play and substantial justice?

 

In his second issue, Conn
argues that exercising jurisdiction over Diamond would not offend traditional
notions of fair play and substantial justice. 
Again, we agree.








Once it has been determined
that the nonresident defendant purposefully established minimum contacts with
Texas, we evaluate the contacts in light of other factors to determine whether
the assertion of personal jurisdiction comports with fair play and substantial
justice. Guardian Royal Exch. Assurance, Ltd. , 815 S.W.2d at 228.  These factors include, where applicable,  (1) the burden on the defendant, (2) the
interests of the forum state in adjudicating the dispute, (3) the plaintiff=s interest in obtaining convenient and effective relief, (4) the
interstate judicial system=s interest in obtaining the most efficient resolution of
controversies, and (5) the shared interest of the several states in furthering
fundamental substantive social policies. 
Id. (quoting World‑Wide Volkswagen Corp. v. Woodson,
444 U.S. 286, 292, 100 S. Ct. 559, 564 (1980); Rudzewicz, 471 U.S. at
477, 105 S. Ct. at 2184.  Even if the
nonresident defendant has purposefully established minimum contacts with the
forum state, the exercise of jurisdiction may not be fair and reasonable under
the facts in a particular case.  Rudzewicz,
471 U.S. at 477, 105 S. Ct. at 2184-85; Guardian Royal Exch. Assurance, Ltd.,
815 S.W.2d at 228.  It is the defendant=s burden to present Aa compelling case that the presence of some other considerations would
render jurisdiction unreasonable.@  Rudzewicz, 471 U.S. at
477, 105 S. Ct. at 2185; Guardian Royal Exch. Assurance, Ltd., 815
S.W.2d at 231.  AOnly in rare cases, however, will the exercise of jurisdiction not
comport with fair play and substantial justice when the nonresident defendant
has purposefully established minimum contacts with the forum state.@  Guardian Royal Exch.
Assurance, Ltd., 815 S.W.2d at 231 (citing Rudzewicz, 471 U.S. at
477‑78, 105 S. Ct. at 2185).

The only evidence before us
relating to the fair-play factors is Diamond=s averment that he is a Michigan resident.   We assume that litigating in Texas would
impose a burden on Diamond, but litigating in a distant forum alone is not
ordinarily sufficient to defeat jurisdiction. 
See id.

  The second fair-play factor weighs in favor
of maintaining jurisdiction in Texas. 
Texas has an interest in adjudicating torts allegedly committed against
its citizens.








The third and fourth factorsCConn=s interest
in obtaining convenient and effective relief and the interstate judicial system=s interest in obtaining the most efficient resolution of controversiesCalso weigh in favor of maintaining jurisdiction over Diamond.  Conn has an obvious interest in litigating
his claim  in the state where he resides,
where several of the other defendants reside, and where he allegedly sustained
his damages.  Further, nothing in the
record suggests that the Texas defendants are amendable to the jurisdiction of
a Michigan court; thus, litigating in Texas promotes the interstate judicial
system=s interest in obtaining efficient resolution of Conn=s claims against Diamond and the Texas defendants in a single
proceeding.

As for the fifth fair-play factor,
we see no substantive social policies implicated by the exercise of
jurisdiction over Diamond.

We hold that Diamond failed
to Apresent a compelling case that the presence of some other
considerations would render jurisdiction unreasonable.@  See Rudzewicz, 471 U.S.
at 477, 105 S. Ct. at 2185; Guardian Royal Exch. Assurance, Ltd., 815
S.W.2d at 231.  Therefore, the trial
court erred by granting Diamond=s special appearance.  We
sustain Conn=s second
issue.  








                                             Conclusion

Having sustained both of Conn=s issues, we reverse the trial court=s order granting Diamond=s special appearance and remand the case to the trial court for
further proceedings.

 

 

ANNE GARDNER

JUSTICE

 

PANEL B:   DAUPHINOT, HOLMAN, and GARDNER, JJ.

 

DELIVERED:  April 6, 2006

 

 











[1]See Tex. R. App. P. 47.4.





[2]Tex. Civ. Prac. & Rem. Code Ann. '
17.042(2) (Vernon 1997).