In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-04-279 CV


____________________



THUNDERBIRD SUPPLY CO., INC., Appellant



V.



LESLIE B. WILLIAMS, Appellee






On Appeal from the 172nd District Court


Jefferson County, Texas


Trial Cause No. E-167,258






OPINION


 This is an interlocutory appeal from the denial of a special appearance. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(7) (Vernon Supp. 2005); Tex. R. Civ. P.
120a. Alleging thirteen corporations "designed, manufactured and marketed" toxic
products placed into the stream of commerce, Leslie B. Williams, a jeweler suffering from
scleroderma, sued Thunderbird Supply Co., Inc. ("Thunderbird"), among others, on
theories of strict product liability, defective marketing, negligence, and breach of
warranty. In its order denying the special appearance, the trial court found that
Thunderbird placed a silica-containing product into the stream of commerce with the
reasonable expectation it would enter Texas. The seven issues raised in this appeal
challenge the trial court's exercise of personal jurisdiction over the appellant, a New
Mexico corporation. (1) For the following reasons, we reverse the trial court's order and
render judgment dismissing Williams's claims against Thunderbird for lack of jurisdiction. 

 A Texas court may exercise personal jurisdiction over a nonresident defendant to
the extent authorized by due process standards and the long-arm statute. Guardian Royal
Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991). 
As the plaintiff, Williams bears the initial burden of pleading allegations sufficient to bring
the nonresident defendant within the provisions of the long-arm statute. See BMC Software
Belg., N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002). In its first issue, Thunderbird
argues that Williams's allegations do not satisfy this initial burden. 

 Our long-arm statute allows Texas courts to exercise jurisdiction over foreign
defendants who are "doing business" within the state. See Tex. Civ. Prac. & Rem. Code
Ann. § 17.042 (Vernon 1997). Williams alleges that he is "a resident-citizen of Jefferson
County, Texas" and Thunderbird "is a foreign corporation doing business in Texas" that
"does not maintain a regular place of business in Texas and has not designated or
maintained an agent for service of process in this State." Williams also alleges that he was
exposed to "various toxic products designed, manufactured and marketed" by the thirteen
so-called "Jewelry Defendants," but he does not allege that exposure occurred in Texas. 
Nonetheless, Williams's venue allegation states, "Venue in Jefferson County is proper in
that all or a substantial part of the events or omissions giving rise to the claims occurred
in this county." Commission of a tort within the state is one means by which a nonresident
may be deemed to be doing business in the state. Tex. Civ. Prac. & Rem. Code Ann.
§ 17.042(2) (Vernon 1997). Upon filing its special appearance, Thunderbird assumed the
burden to negate all bases of personal jurisdiction alleged by the plaintiff. American Type
Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 807 (Tex. 2002); Kawasaki Steel
Corp. v. Middleton, 699 S.W.2d 199, 203 (Tex. 1985). Thus, Williams met his initial
burden of pleading allegations sufficient to bring Thunderbird within the long-arm statute,
and Thunderbird assumed the burden to negate the basis of personal jurisdiction alleged
by Williams. Issue one is overruled.

 Next, Thunderbird contends its independent contacts with Texas do not support the
exercise of jurisdiction. Due process requires that the nonresident defendant must have
purposefully established minimum contacts with Texas and that the exercise of personal
jurisdiction over the nonresident defendant must not violate traditional notions of fair play
and substantial justice. Guardian Royal, 815 S.W.2d at 230-31. Purposely established
minimum contacts may support the exercise of specific jurisdiction, where the defendant's
liability arises from an activity conducted in the forum state, or general jurisdiction, where
the nonresident maintains continuous and systematic contacts with the forum state. BMC
Software, 83 S.W.3d at 795-97. An analysis of specific jurisdiction focuses on the
relationship between the defendant, the forum, and the litigation, and requires a substantial
connection between the plaintiff's cause of action and the activities the defendant
purposefully directed to the forum. Guardian Royal, 815 S.W.2d at 228, 230. An
analysis of general jurisdiction is more demanding, and "requires a showing of substantial
activities in the forum state." Id. at 228. In American Type Culture Collection, 83
S.W.3d at 806, the Supreme Court explained that our review must focus upon the
defendant's actions and expectations, as follows:

 The minimum-contacts analysis requires that a defendant
"purposefully avail" itself of the privilege of conducting activities within
Texas, thus invoking the benefits and protections of our laws. Burger King
Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528
(1985). The defendant's activities, whether they consist of direct acts within
Texas or conduct outside Texas, must justify a conclusion that the defendant
could reasonably anticipate being called into a Texas court. World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62
L.Ed.2d 490 (1980). A defendant is not subject to jurisdiction here if its
Texas contacts are random, fortuitous, or attenuated. See Guardian, 815
S.W.2d at 226. Nor can a defendant be haled into a Texas court for the
unilateral acts of a third party. Id. It is the quality and nature of the
defendant's contacts, rather than their number, that is important to the
minimum-contacts analysis. Id. at 230 n.11.


 Thunderbird contends the evidence does not support the exercise of specific
jurisdiction. An affidavit from Thunderbird officer Claudia Klesert describes
Thunderbird's contacts with Texas, as follows: (1) half of Thunderbird's sales consist of
"supplies, tools, findings, and stones"; (2) although most of its over-the-counter sales are
to craftsmen from New Mexico and Arizona, Thunderbird operates two mail order sales
units; (3) one mail order sales unit services small volume retail sales to small volume
customers such as hobbyists, while the other supplies larger volume sales to wholesale
accounts such as bead shops; (4) in the previous five years, Thunderbird had not sold any
products to Williams or to his employers; Thunderbird did not begin selling any metal
polishing compounds formerly manufactured or sold by Maspeth Polishing Material Co.,
Inc. until February 2002; (5) based on Klesert's knowledge, the only sales by Thunderbird
of polishing compounds to Texas residents prior to February 2002 were through mail order
sales; (6) less than 2% of Thunderbird's sales were in Texas. 

 Williams contends he traced a silica-containing polishing compound of the brand
name Tripoli from Williams to his 1977-78 employer Ardans, to New York retailer, Paul
H. Gesswein & Co., Inc., to Thunderbird. To prove he was injured in the forum state by
the appellant's silica-containing product, Williams relies upon discovery produced by co-defendant Paul H. Gesswein & Co., Inc. ("Gesswein"), and excerpts from Williams's
deposition. Williams's evidence consists of the following: (1) Gesswein's production of
a Material Safety Data Sheet dated May 28, 2002, that identifies "A-Tripoli" as a
Thunderbird product containing 70-80% silica; (2) Williams's deposition testimony that
he "used rouge or Tripoli that was purchased from Gesswein" when he worked at "a place
called Ardan's" in 1977 and 1978. Thus, Williams argues, he satisfies the "stream of
commerce" test in World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98, 100
S.Ct. 559, 62 L.Ed.2d 490 (1980). 

 Both at trial and on appeal, Thunderbird raises authentication and hearsay objections
to Gesswein's responses to discovery conducted before Williams added Thunderbird to his
suit. We need not decide whether the trial court erred in considering this evidence because
the evidence in the appellate record does not establish purposeful acts directed toward the
forum state. At most, the evidence establishes that a silica-containing product introduced
into the stream of commerce by Thunderbird eventually found its way to a Texas resident
allegedly injured by silica exposure. There is no evidence to support the trial court's
finding that Thunderbird had a reasonable expectation that the product would enter Texas. 
In World-Wide Volkswagen, the United States Supreme Court noted it was foreseeable that
automobiles sold by the foreign corporation might travel to the forum state, but that the
"financial benefits accruing to the defendant from a collateral relation to the forum State
will not support jurisdiction if they do not stem from a constitutionally cognizable contact
with that State." Id. at 299. Likewise, in CMMC v. Salinas, 929 S.W.2d 435, 436-40
(Tex. 1996), the Texas Supreme Court held the absence of evidence that the foreign
corporation purposefully availed itself of the Texas market precluded the exercise of
personal jurisdiction over the maker of a winepress manufactured in Europe, sold to a New
York distributer who advertised in national publications, and shipped from the
manufacturer to the consumer FOB Houston. There is no evidence of Thunderbird's
efforts to market its product in Texas, or that it made any effort to serve a market for its
product in the forum state, or was even aware that a third party marketed Thunderbird's
products in Texas. We hold that the evidence does not support the exercise of specific
jurisdiction.

 On appeal, Williams argues the evidence of Thunderbird's mail order sales in Texas 
satisfies the "continuous and systematic" prong of the test for general jurisdiction, and that
the trial court's order is sustainable on that basis. Thunderbird contends Williams failed
to allege a basis for general jurisdiction. Although Williams alleges Thunderbird is "doing
business" in Texas, his petition does not allege that Thunderbird maintains continuous and
systematic contacts with the forum state. Williams's response to the special appearance
argues there is sufficient evidence "Thunderbird placed the products at issue in this case
into the stream of commerce with the reasonable expectation that they would enter Texas,"
but, as in his petition, Williams does not contend that Thunderbird maintains continuous
and systematic contacts with this state and does not directly address the issue of general
jurisdiction. 

 The trial court incorporated its factual findings into its order, and its expressly
stated basis for exercising jurisdiction was that "Thunderbird placed the products at issue
in this case into the stream of commerce with the reasonable expectation that they would
enter Texas." (emphasis added) The trial court did not find that Thunderbird conducts
substantial activities in Texas, limited its findings to Thunderbird's activities in this case,
and made no factual findings relating to Thunderbird's activities unrelated to this case. 
There are no factual findings germane to general jurisdiction as opposed to specific
jurisdiction. Assuming the issue of general jurisdiction was before the trial court for its
consideration, the grounds expressly stated in the order denying the special appearance
relate to specific jurisdiction. Therefore, only specific jurisdiction is at issue in this
appeal. 

 Williams also suggests he "should have an opportunity to conduct discovery into the
supply houses that purchased polishing compounds from Thunderbird." Unlike the
plaintiff in BMC Software, 83 S.W.3d at 800, Williams did not request a continuance of
the special appearance hearing so he could conduct further discovery. Therefore, we
decline to remand the case to the trial court for further discovery. 

 We conclude that Thunderbird did not purposefully establish sufficient minimum
contacts with Texas to support exercising jurisdiction over it. Therefore, the trial court
erred in denying the special appearance. Issue two is sustained. (2) We reverse the trial
court's order and render judgment dismissing the claims of Leslie B. Williams against
Thunderbird Supply Co., Inc.

 REVERSED AND RENDERED.


 
 _______________________________

 STEVE MCKEITHEN

 Chief Justice


Submitted on February 10, 2005

Opinion Delivered March 24, 2005

Before McKeithen, C.J., Kreger and Horton, JJ.
1. The appellant's brief combines its issues in a single argument. The issues are: (1)
the absence of specific jurisdictional allegations required the Special Appearance to be
granted upon Thunderbird Supply Co. Inc.'s proof of non-residency; (2) Thunderbird
Supply Co. Inc.'s independent contacts with Texas do not support the exercise of
jurisdiction; (3) Leslie B. Williams produced no evidence that would support personal
jurisdiction in Texas over Thunderbird Supply Co. Inc.; (4) the exercise of personal
jurisdiction over Thunderbird Supply Co. Inc. is not consistent with traditional notions of
fair play and substantial justice; (5) the trial court should have excluded from evidence
certain discovery responses of a defendant not a party to the Special Appearance; (6) the
trial court's findings of fact are not supported by the evidence; and (7) the trial court's
conclusions of law are incorrect and should be reversed.
2. Because we reverse the trial court's order denying the special appearance, we do
not reach the appellant's remaining issues.