

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-08-062-CV

SOUTHWEST AVIATION
SPECIALITIES, L.L.C. AND DAVID C.
GUZMAN, AN INDIVIDUAL                                    APPELLANTS

V.

WILMINGTON AIR VENTURES IV,
INC. AND DELISA AIRCRAFT
MANAGEMENT, INC.                                         APPELLEES

------------

### FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

In three issues, Appellants Southwest Aviation Specialties, LLC and David

C. Guzman appeal the denial of their special appearances and the evidentiary

rulings that the trial court made in support of that denial.  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

## II. Factual and Procedural Background

This case involves a contract for aviation-related goods and services between Southwest Aviation Specialities ("Southwest") and Appellees Wilmington Air Ventures IV, Inc. and Delisa Aircraft Management, Inc. (collectively, "Wilmington"). Wilmington sued Southwest and Guzman, Southwest's general manager, both Oklahoma residents, for breach of contract and deceptive trade practices, among other claims. Wilmington alleged in its original petition that Southwest and Guzman "attempted to repair some of the avionics work while [Wilmington's aircraft] was at a maintenance facility in Fort Worth, Texas, known as Phazar Flight Support." Southwest and Guzman each filed special appearances, which the trial court denied.

## III. Special Appearances

In their first issue, Southwest and Guzman complain that the trial court erred when it denied their special appearances, claiming that they negated all bases for personal jurisdiction, specific and general. In their second issue, they argue that the trial court erred when it overruled their objections to Wilmington's affidavits in opposition to the special appearances. And in their third issue, Southwest and Guzman complain that the trial court erred when it "deemed admitted" their objections and responses to Wilmington's second request for admissions.

2

The trial court's order denying Southwest's and Guzman's special appearances noted that it granted all parties further time to file additional pleadings and that, after notice to all parties "and upon considering the Defendants' Special Appearances, the response, the evidence, the pleadings and the arguments of counsel, the Court is of the opinion that Defendants' Special Appearances should be denied."  The record also includes a letter from the trial court to the parties, dated the same day as the order and enclosed with the order, stating, "The Defendants' objections to the Plaintiffs' Special Appearance evidence are each denied."

## A. Standard of Review

Whether a trial court has personal jurisdiction over a defendant is a question of law reviewed de novo. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793–94 (Tex. 2002); *TravelJungle v. Am. Airlines, Inc.*, 212 S.W.3d 841, 845 (Tex. App.—Fort Worth 2006, no pet.); *SITQ E.U., Inc. v. Reata Rests., Inc.*, 111 S.W.3d 638, 644 (Tex. App.—Fort Worth 2003, pet. denied).  The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793; *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 644.  Wilmington met its initial burden by asserting in its original petition that Southwest and Guzman, Oklahoma residents, "engaged in

3

business in Texas, a contract made the basis of this dispute was performed, in part, in Texas, and the Defendants engaged in other wrongful acts in Texas." *See* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 2008). A nonresident defendant challenging a Texas court's personal jurisdiction over it must then negate all jurisdictional bases. *BMC Software*, 83 S.W.3d at 793; *TravelJungle*, 212 S.W.3d at 845; *Reata*, 111 S.W.3d at 644–45.

## B. Deemed Admissions

Southwest and Guzman claim that their objections and responses to Wilmington's second set of requests for admissions were timely filed on December 28, 2007, because they were "actually served" or they "actually received" Wilmington's second set of requests for admissions on November 29, 2007. Thus, they argue, the trial court should not have "deemed admitted" Wilmington's requests for admissions.[2]

Rule 198.2(a) of the rules of civil procedure requires that a responding party must serve a written response to requests for admissions on the

---

[2] Wilmington responds that Southwest and Guzman have waived this alleged error because the trial court made no rulings and did not enter any order with regard to the "deemed admissions." However, when responses to requests for admissions are not timely served, the requests are considered admitted without the necessity of a court order. Tex. R. Civ. P. 198.2(c). Therefore, contrary to Wilmington's position, the trial court did not have to make a ruling or enter an order with regard to the alleged "deemed admissions."

4

requesting party "within 30 days *after service* of the request."  Tex. R. Civ. P. 198.2(a) (emphasis added).  Service of requests for admissions falls under rule 21a.  Tex. R. Civ. P. 21a; *Etheredge v. Hidden Valley Airpark Ass'n, Inc*., 169 S.W.3d 378, 381–83 (Tex. App.—Fort Worth 2005, pet. denied) (op. on reh'g).  Rule 21a provides that service by certified mail is complete upon deposit of the document, enclosed in a postpaid, properly addressed wrapper, in a post office or official depository under the care and custody of the United States Postal Service.  Tex. R. Civ. P. 21a; *Wheeler v. Green*, 157 S.W.3d 439, 441 (Tex. 2005) (explaining that the "mailbox rule," rule 21a, deems requests for admissions served when mailed by certified mail, not when received); *see also* 2 David E. Keltner, *Texas Practice Guide: Discovery*, § 7:34 (2008) ("The time for response begins ticking on the date requests are mailed (not on the date of their receipt).").  Rule 21a also provides that "[w]henever a party has the right or is required to do some act within a prescribed period after the service of a notice or other paper upon him and the notice or paper is served upon by mail . . . , three days shall be added to the prescribed period."  Tex. R. Civ. P. 21a.  Therefore, Southwest had thirty-three days from the date of *service* to respond to Wilmington's second set of requests for admissions.

Wilmington's second set of requests for admissions was sent by certified mail and bears a U.S. post office postmark of November 21, 2007.  Therefore,

5

Southwest's responses were due thirty-three days later, on December 24, 2007. Tex. R. Civ. P. 21a. Southwest filed its responses on December 28, 2007.

Southwest and Guzman refer us to *Etheredge* and to *Payton v. Ashton*, 29 S.W.3d 896 (Tex. App.—Amarillo 2000, no pet.), for the proposition that the date of "actual service" or "actual receipt" of the requests for admissions on the responding party is the critical and dispositive date. *Etheredge* and *Payton* both involved requests for admissions sent certified mail that were returned "unclaimed." *Etheredge*, 169 S.W.3d at 383–84; *Payton*, 29 S.W.3d at 898. Here, in contrast, Southwest and Guzman admit that they actually received the requests for admission, but they argue that because they received the requests outside of the three days provided for in rule 21a, their responses should not have been deemed admitted.

Southwest and Guzman refer to a footnote in *Etheredge* in which this court stated that, on remand, rule 198.2 "will allow Etheredge thirty days to respond *upon receiving* HVAA's request for admissions unless HVAA establishes that Etheredge has already received constructive notice of the request." 169 S.W.3d at 383 n.3 (emphasis added). However, within the case's context, this statement acted not to modify or expand rule 198.2's requirement of "within thirty days after service" or rule 21a's definition of

6

service by certified mail, but instead to establish that Etheredge actually had to be *served*, as HVAA's previous requests for admissions had been returned to HVAA "unclaimed," and Etheredge had therefore never received them. *See id.* at 382–83. A party's duty to respond is triggered upon receipt of the requests, but that party also has a duty to note the date of service and to calculate the due date of its responses from the date of service. *See Cudd v. Hydrostatic Transmission, Inc.*, 867 S.W.2d 101, 102–03 (Tex. App.—Corpus Christi 1993, no writ) ("The rules do not provide automatic tolling of the start date due to tardy mail service.").

Here, rules 21a and 198.3 were available to provide Southwest and Guzman with a remedy. Rule 21a states:

> Nothing herein shall preclude any party from offering proof that the notice or instrument was not received, or, *if service was by mail, that it was not received within three days from the date of deposit in a post office* or official depository under the care and custody of the United States Postal Service, and upon so finding, the court may extend the time for taking the action required of such party or grant such other relief as it deems just.

Tex. R. Civ. P. 21a (emphasis added). Rule 198.3 states that the trial court may permit a party to withdraw an admission if the party shows good cause for the withdrawal and the court finds that the party relying on the deemed admissions will not be unduly prejudiced. Tex. R. Civ. P. 198.3; *see also* Renee H. Tobias, *Deemed Admissions: Tool, Trap or Both?* 46 Baylor L. Rev. 709, 713

7

(1994) (stating that a motion to extend time to respond, to prevent deemed admissions, must be filed prior to the expiration of the original thirty-day period because deemed admissions are automatic; if time has passed, then a motion to withdraw deemed admissions must be filed).

Southwest and Guzman offered proof that the requests for admissions were not received within three days from the date of deposit, and the trial court granted both parties additional time to file "whatever supplemental pleading[s] you want to file." However, Southwest and Guzman failed to file a motion to withdraw their admissions. Therefore, the deemed admissions relied upon by Wilmington in its response to Southwest and Guzman's special appearances were never withdrawn. We overrule Southwest and Guzman's third issue.

## C. Personal Jurisdiction

Texas courts may exercise jurisdiction over a nonresident defendant only if the exercise of jurisdiction is authorized by the Texas long-arm statute and comports with state and federal constitutional guarantees of due process. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574–75 (Tex. 2007); *BMC Software*, 83 S.W.3d at 795. The federal due process test consists of two parts: (1) whether the nonresident defendant purposely established "minimum contacts" in the forum state; and (2) if so, whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger*

8

*King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76, 105 S. Ct. 2174, 2183–84 (1985); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230–31 (Tex. 1991).  Minimum contacts are sufficient for personal jurisdiction when the nonresident defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.  *See Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005).

A nonresident's contacts with the forum state may give rise to either specific or general jurisdiction.  *BMC Software*, 83 S.W.3d at 795–96.  Specific jurisdiction exists where the defendant's alleged liability stems from an activity conducted within the forum state.  *Id*. at 796.  A Texas court may assert specific jurisdiction over an out-of-state defendant if the defendant's contact with this state is purposeful and the injury arises from or relates to those contacts.  *See Moki Mac*, 221 S.W.3d at 572–73, 576 (considering, in light of *Michiana*, the extent to which a claim must "arise from or relate to" forum contacts to confer specific jurisdiction over a nonresident defendant).  This "purposeful availment" inquiry has three parts: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied upon must be purposeful rather than

9

random, fortuitous, or attenuated; and (3) the defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction. *Id*. at 575; *Michiana*, 168 S.W.3d at 784–85; *see also World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).

The following requests for admission were deemed admitted:

1. Admit that you *traveled to* Phazar at the Fort Worth Airport on at least one occasion in connection with the Project,[3] during the relevant time frame.[4]

2. Admit that you were *on board* the Aircraft[5] during the time it was at Phazar at the Fort Worth Airport during the relevant time frame.

---

[3] The "Instructions/Definitions" section of Wilmington's requests for admissions defines "Project" as

the aircraft and avionics maintenance, goods, and services provided by [Guzman and Southwest], including aircraft and avionics goods and services required for the Aircraft to be modified and certificated for operations requiring compliance with Reduced Vertical Separation Minima ("RVSM"), the update to the Aircraft's Flight Management System ("FMS"), and the installation of a Terrain Awareness and Warning System ("TAWS").

[4] The "Instructions/Definitions" section defines "relevant time frame" as "from the year 2003 to the present."

[5] The "Instructions/Definitions" section defines "Aircraft" as "that certain Gulfstream II multi-engine jet aircraft, registration number N4NR, manufacturer's serial number 225 and/or that certain aircraft made the basis and subject of Plaintiff's Petition, as amended, in this lawsuit."

3. Admit that you *performed* avionics and other system troubleshooting on the Aircraft related to the Project while it was located at the Fort Worth Airport, during the relevant time frame.

4. Admit that you *met with* representatives of Plaintiff at the Fort Worth Airport during the relevant time frame.

5. Admit that you *met with* representatives of Phazar at the Fort Worth Airport during the relevant time frame in connection with the Aircraft and/or the Project.

6. Admit that your meetings with representatives of Plaintiff and of Phazar at Phazar at the Fort Worth Airport *were in connection with* problems that continued to exist in connection with the Project that required correction, during the relevant time frame.

7. Admit that you *attended meetings* with Plaintiffs' representatives at Phazar at the Fort Worth Airport from time to time during the relevant time frame.

8. Admit that you *attended a meeting* with Plaintiffs' representatives and with counsel for the Plaintiffs on November 30, 2005, at Phazar at the Fort Worth Airport.

9. Admit that the meeting you attended on November 30, 2005, at Phazar at the Fort Worth Airport, *was for the purpose*, in part, of discussing the Aircraft and the Project, with Plaintiffs' representatives.

Although Southwest and Guzman claim that they committed no specific or purposeful acts in Texas and that there is no evidence of their purposeful availment through which they can be said to have sought a benefit in Texas, their deemed admissions clearly provide a basis for the trial court to exercise specific personal jurisdiction. Under *Moki Mac*, the deemed admissions above

11

describe relevant contacts by Southwest and Guzman in Texas that were purposeful rather than random, fortuitous, or attenuated. *See* 221 S.W.3d at 575. Furthermore, Southwest and Guzman never denied that they had a contract with Wilmington involving the Aircraft or that they failed to seek a benefit from performing the contract that, per the deemed admissions, involved some performance in Texas. Therefore, sufficient contacts existed to give the trial court specific personal jurisdiction over Southwest and Guzman. We overrule Southwest and Guzman's first issue.

### IV. Conclusion

Having overruled Southwest and Guzman's dispositive issues, we affirm the trial court's judgment. *See* Tex. R. App. P. 47.1.


BOB MCCOY
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: November 20, 2008

12