IN THE
TENTH COURT OF APPEALS


No. 10-13-00150-CV

**IMV TECHNOLOGIES AND IMV INTERNATIONAL CORPORATION D/B/A IMV TECHNOLOGIES USA,**

**Appellants**

 **v.**

**INGURAN, LLC D/B/A SEXING TECHNOLOGIES,**

**Appellee**

**From the 85th District Court
Brazos County, Texas
Trial Court No. 12-001420-CV-85**

## MEMORANDUM OPINION

This is a dispute between a Texas company and companies in Minnesota and France about where a lawsuit will be tried. Inguran, LLC d/b/a Sexing Technologies, a company which has its principal place of business in Navasota, Texas, possesses technology which allows it to sort semen by sex for use in artificial insemination for the breeding of cattle. Inguran uses this technology in its various facilities around the

country and in Canada.  IMV Technologies (IMV) is a French manufacturer of straw filling machines which have been used by Inguran in its semen sorting business.  IMV International Corporation d/b/a IMV Technologies USA (IMV USA) is a Minnesota company which purchases these machines from manufacturers like IMV for resale in the United States.

In January of 2011, Inguran purchased six new models of a straw filling machine, the MX5, from IMV USA for use in Inguran's facilities.  One MX5 was delivered to Navasota.  The remaining five machines were delivered to Inguran's facilities in other states.  Six more machines were ordered but not delivered because in the meantime, Inguran had received reports from its facilities that the straws were not being filled or sealed properly.  The machine in Navasota was also not filling and sealing the straws properly.  Inguran's customers also started complaining and demanding refunds.

Inguran sued IMV USA and IMV in Brazos County, Texas.  Both IMV USA and IMV filed special appearances.  After a hearing on IMV USA's special appearance, the trial court, in one order, denied both IMV USA's and IMV's special appearance.  Because the trial court did not err in denying IMV USA's special appearance but erred in denying IMV's special appearance, we affirm in part and reverse and remand in part the trial court's order.

**PERSONAL JURISDICTION**

In five issues, IMV USA asserts that the trial court erred in denying its special

appearance. In one issue, IMV makes the same assertion.

Personal jurisdiction is a question of law which we review de novo. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Texas courts have personal jurisdiction over a nonresident defendant when (1) the Texas long-arm statute provides for it, and (2) the exercise of jurisdiction is consistent with federal and state due process guarantees. *Spir Star AG v. Kimich,* 310 S.W.3d 868, 872 (Tex. 2010); *Moki Mac River Expeditions v. Drugg,* 221 S.W.3d 569, 574 (Tex. 2007).

Under the Texas long-arm statute, the plaintiff has the initial burden to plead sufficient allegations to confer jurisdiction. *Kelly*, 301 S.W.3d at 658; *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009); *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 807 (Tex. 2002). The defendant seeking to avoid being sued in Texas then has the burden to negate all potential bases for jurisdiction pled by the plaintiff. *See id*. When, as here, the trial court does not make findings of fact and conclusions of law in support of its ruling, "'all facts necessary to support the judgment and supported by the evidence are implied.'" *Retamco*, 278 S.W.3d at 337 (quoting *BMC Software*, 83 S.W.3d at 795 (citations omitted)).

**STEP ONE—THE LONG ARM STATUTE**

The Texas long-arm statute provides:

> In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (Vernon 2008). The statute's broad doing-business language "allows the statute to reach as far as the federal constitutional requirements of due process will allow." *Retamco*, 278 S.W.3d at 337 (quoting *Moki Mac*, 221 S.W.3d at 575 (citations omitted)); accord *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005). Therefore, we only analyze whether IMV USA's and IMV's acts would bring them within Texas' jurisdiction consistent with constitutional due process requirements. *See Moki Mac*, 221 S.W.3d at 575 (citations omitted).

**STEP TWO—CONSTITUTIONAL DUE PROCESS GUARANTEES**

Under a constitutional due-process analysis, personal jurisdiction is achieved when (1) the non-resident defendant has established minimum contacts with the forum state, and (2) the assertion of jurisdiction complies with "'traditional notions of fair play and substantial justice.'" *Moki Mac*, 221 S.W.3d at 575 (quoting I*nt'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). We focus on the defendant's activities and expectations when deciding whether it is proper to call the defendant before a Texas court. *Int'l Shoe Co.*, 326 U.S. at 316.

## A. Minimum Contacts

A defendant establishes minimum contacts with a state when it "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958) (citing *Int'l Shoe Co.*, 326 U.S. at 319). "The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being called into a Texas court." *Am. Type Culture Collection*, 83 S.W.3d at 806 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 62 L. Ed. 2d 490 (1980)).

A nonresident's contacts can give rise to either specific or general jurisdiction. *Am. Type Culture Collection*, 83 S.W.3d at 806. Inguran argued only specific jurisdiction in its petition and here in response to IMV USA's and IMV's appeal. A court has specific jurisdiction over a defendant if its alleged liability arises from or is related to an activity conducted within the forum. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010), *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). Unlike general jurisdiction which requires a "more demanding minimum contacts analysis," *CSR Ltd.*, 925 S.W.2d at 595, specific jurisdiction "'may be asserted when the defendant's forum contacts are isolated or sporadic, but the plaintiff's cause of action arises out of those contacts with the state.'" *Spir Star AG*, 310 S.W.3d at 873 (quoting 4 CHARLES ALAN WRIGHT &

ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 (3d ed. 2002)).

In such cases, "we focus on the 'relationship among the defendant, the forum[,] and the litigation.'" *Spir Star AG*, 310 S.W.3d at 873 (quoting *Moki Mac*, 221 S.W.3d at 575-76). Specific jurisdiction arises when (1) the defendant purposefully avails itself of conducting activities in the forum state, and (2) the cause of action arises from or is related to those contacts or activities. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985); *National Indus. Sand Ass'n v. Gibson*, 897 S.W.2d 769, 774 (Tex. 1995).

## 1. IMV USA

Inguran alleged in its petition breach of contract and various torts as causes of action against IMV USA. Inguran alleged that IMV USA forwarded an offer to sell six MX5 machines to Inguran at its office in San Antonio. Inguran accepted the offer by forwarding a purchase order for the six MX5 machines to be shipped to Navasota. One MX5 was delivered to Navasota where Travis Most, an employee of IMV USA, installed and tested it. Three months later, Travis again traveled to Navasota to repair the MX5 installed there. Inguran alleged in its petition that IMV USA breached the contract because the MX5 in Navasota was failing to fill and seal the straws adequately. Specifically, it alleged, the third needle was failing to fill the straws completely.

*Contacts Prior to the MX5 Purchase*

As to minimum contacts, Inguran attached to its response to IMV USA's special

appearance, and, without objection, introduced into evidence at the hearing on IMV USA's special appearance testimony and documentation that IMV USA has had an ongoing relationship with Inguran since 2005 and had approximately 250 other customers in Texas. Since 2005, Inguran has sent purchase orders to IMV USA and IMV USA sends Inguran the product ordered and an invoice. Inguran's purchases are billed to Texas and payment comes from Texas. IMV USA communicates with Inguran by telephone approximately once a week and corresponds by email more than once a week. In 2005 and 2006, Texas represented 11.9% and 11.79%, respectively, of IMV USA's revenue. In 2011 and 2012, Inguran was in the top five of purchasers of straws from IMV USA. Further, of the 11 MX5s sold by IMV USA, nine were sold to Inguran. In 2011, IMV USA billed Inguran for $1.1 million in products sold.

*Purchase of the MX5*

Inguran also attached and introduced the affidavit of its Chief Operating-Chief Executive Officer, Juan Moreno. Moreno stated that IMV USA called him sometime in 2010 to tell him that IMV was now manufacturing, and IMV USA was now selling, the MX5. IMV USA then offered to have Inguran test one of the machines. The MX5 was sent to Navasota, and after an initial trial period, Inguran agreed to acquire a series of machines from IMV USA. Prior to the contact by IMV USA, Moreno did not know IMV USA and IMV were manufacturing and selling the MX5.

IMV USA did not negate either in its special appearance or at the hearing on its

special appearance any of the jurisdictional bases alleged by Inguran in its petition.

In light of the pleadings on file and evidence introduced at the special appearance hearing, we conclude that IMV USA purposefully availed itself of conducting activities in Texas, and the breach of contract claim arises from or is related to those contacts or activities. Thus, IMV USA's contacts are sufficient to support specific jurisdiction.

## 2. IMV

IMV is a French company which was alleged to have manufactured the MX5 at the center of this litigation. Inguran did not allege a breach of contract against IMV but only alleged various torts by IMV. Those torts are: breach of express warranty for goods, breach of implied warranty of fitness, breach of implied warranty of merchantability, strict liability, and negligent misrepresentation.

Two of these causes of action, breach of express warranty for goods and negligent misrepresentation, were based on alleged representations made by IMV that the MX5: 1) would adequately fill and seal straws; 2) was more cost-efficient; 3) would result in less raw material being lost during the filling and sealing process; 4) was able to produce/fill more straws and thus produce more income than conventional filling equipment; 5) would be maintenance-free; 6) would be a more automated process; and 7) would require little or no attention by an operator. Inguran alleged that these misrepresentations occurred in 2010 when IMV USA and IMV "reached out" to Inguran

personnel in Navasota, Texas. Inguran also alleged in its breach of implied warranty of fitness claim that IMV knew for what purposes Inguran was using the MX5 and that IMV knew or had reason to know that Inguran was relying on IMV's skill or judgment.

IMV responded with its special appearance and attached an affidavit of its Chief Financial Officer, Frederic Keller. Keller stated that IMV does not market or distribute products to the United States. IMV manufactures MX5 machines in France for distribution worldwide. Machines for sale in the United States are shipped from France to the distributor in the State of Minnesota. The distributor for the United States is IMV USA and IMV does not in any way control or direct the activity of IMV USA with respect to the sale of products in the United States. IMV was not involved in any subsequent distribution of machines to Texas and does not design its products for use in Texas. It does not advertise or market its products in Texas and it makes no direct sale of products to Texas. IMV has not entered into any contracts with Inguran and was not a party to the contract for the sale of the MX5 at issue. IMV also averred that it does not do business in Texas, does not maintain an office in Texas, and has no agents in Texas. IMV also attached deposition testimony of the corporate representative of IMV USA who stated that prior to August of 2011, which is during the time Inguran purchased the MX5 from IMV USA, IMV USA bought the MX5 machines from another manufacturer, Cryovet.

Inguran did not respond to IMV's special appearance and no hearing was held

on IMVs special appearance. Even if we were to consider the evidence presented in Inguran's response to IMV USA's special appearance and at the hearing on IMV USA's special appearance, which we do not, Inguran's evidence belies jurisdiction. The affidavit of Inguran's Chief Operating-Chief Executive Officer states only that IMV USA contacted him about the MX5. He does not say anything about IMV contacting him or any representations regarding the quality and ability of the machine. Further, Inguran attaches the same portion of the deposition testimony of the corporate representative of IMV USA who stated that prior to August of 2011, the MX5 machines were purchased from a different manufacturer than IMV.

As to the breach of implied warranty of merchantability and strict liability causes of action, Inguran alleged that the MX5 was not merchantable at the time it left IMV's possession and was defective at the time it left IMV's possession. Inguran failed to plead that any of these acts occurred in Texas. The mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns. *Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 660 (Tex. 2010). Because of Inguran's pleading failure, IMV could, and did, meet its burden to negate all bases of jurisdiction by proving through the affidavit of its Chief Financial Officer that it is incorporated in France, its principal place of business is in France, and it does not do business of any kind in Texas. *See Siskind v. Villa Foundation for Education, Inc*., 642 S.W.2d 434, 438 (Tex. 1982). Again, Inguran did not challenge IMV's proof, nor did it present any responsive

evidence establishing the requisite link with Texas.

In light of Inguran's pleadings and the evidence attached to IMV's special appearance, we conclude that IMV did not purposefully avail itself of conducting activities in Texas. Thus, IMV's contacts are not sufficient to support specific jurisdiction, and IMV's special appearance should have been granted.

IMV's issue is sustained.

## B. Traditional Notions of Fair Play and Substantial Justice

Having determined that at least IMV USA has minimum contacts with Texas sufficient to support specific jurisdiction, we must now determine whether an assertion of jurisdiction over IMV USA comports with "traditional notions of fair play and substantial justice." *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991). "Only in rare cases, however, will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id.* at 231 (citing *Burger King*, 471 U.S. at 477). Nonetheless, we still consider: (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009);

*Guardian Royal*, 815 S.W.2d at 228, 231. To defeat jurisdiction, IMV USA must present a compelling case that the presence of some consideration would render jurisdiction unreasonable. *Spir Star AG v. Kimich*, 310 S.W.3d 868, 878-879 (Tex. 2010).

IMV USA contends that it will be unduly burdened to try the case in Texas because it is a small company and all of it employees who may have knowledge of the relevant facts reside in Minnesota. However, IMV USA had no previous problem sending employees to Texas to set up the MX5, train Inguran's employees, run tests on the MX5, and repair the MX5; all in Texas. We do not perceive an undue burden, then, in trying a lawsuit in Texas. IMV USA also claims that Texas has little interest in adjudicating the dispute between IMV USA and Inguran. However, Texas has an interest in adjudicating disputes involving Texas residents, and Texas is a convenient forum to adjudicate this dispute. *See Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 919 (Tex. App.—Dallas 2005, no pet.). Further, IMV USA contends that because the MX5 was manufactured in France, the forum with the greatest interest in resolution of the dispute is France. The fact that the MX5 may have been manufactured in France cannot, by itself, defeat jurisdiction. *See Spir Star*, 310 S.W.3d at 879. Further, Texas has an interest in exercising jurisdiction over controversies arising from injuries a Texas resident sustains from products that are purposefully brought into the state and purchased by Texas companies. *Id*.

Weighing the various factors, we find that the exercise of specific jurisdiction

over IMV USA by a Texas court does not offend traditional notions of fair play and substantial justice.

IMV USA's issues are overruled.

**CONCLUSION**

Because we have overruled IMV USA's issues on appeal, the portion of the trial court's order which denies IMV USA's special appearance is affirmed. Because we have sustained IMV's issue on appeal, the portion of the trial court's order which denies IMV's special appearance is reversed and remanded to the trial court to render an order which grants IMV's special appearance.

TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed in part and reversed and remanded in part
Opinion delivered and filed November 14, 2013
[CV06]